Luis Javier PEREZ–OLANO; Manuel Gomez; Michael Yuban Obando; Casa Libre Youth Shelter; Lucia Urey; Maejean Robinson; Luis Miguel Morales; Yan Jun Li; Freddy Garrido–Martinez, Plaintiffs,

v.

Alberto GONZALEZ, Attorney General; Michael Chertoff, Secretary of Homeland Security; Office of Refugee Resettlement, Defendants.

No. CV 05–03604 DDP (RZx).

United States District Court, C.D. California.

Jan. 8, 2008.

---

Angela Viramontes, Curiale Dellaverson Hirschfeld & Kraemer LLP, Carlos Holguin, Peter A. Schey, Michelle Lynn Carey, Center for Human Rights & Constitutional Law, Diego Jose Cartagena, Gary Slossberg, Los Angeles Center for Law and Justice, Los Angeles, CA, for Plaintiffs.

David E. Pinchas, AUSA-Office of U.S. Attorney, Civil Division, Los Angeles, CA, Melissa S. Leibman, United States Department of Justice, Civil Division, Washington, DC, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY ADJUDICATION

DEAN D. PREGERSON, District Judge.

This matter is before the Court on the Plaintiffs' motion for class certification, and Plaintiffs' motion for partial summary adjudication. Plaintiffs are immigrant youth that bring this action to challenge certain of Defendants' policies, practices, and regulations with respect to the special immigrant juvenile provisions of the Immigration and Nationality Act.

On September 10, 2007, the Court heard oral argument on Plaintiffs' motion for class certification. The Court deferred ruling on the motion for class certification and invited a motion for summary adjudication on questions of law raised by this action. On November 19, the Court heard oral argument on Plaintiffs' motion for summary adjudication, and Defendants' cross-motion for summary judgment.

The Court is prepared to rule on both motions and does not need additional oral argument. After reviewing the submissions of the parties and hearing oral argument on the motion for class certification, the Court grants the motion in part and denies the motion in part. After reviewing the submissions of the parties and hearing oral argument on Plaintiffs' motion for summary adjudication and Defendants' cross-motion for summary judgment, the Court grants the motions in part and denies the motions in part.

## I. BACKGROUND

### A. *The Special Immigrant Juvenile Provisions of the Immigration and Nationality Act*

In 1990, Congress enacted the special immigrant juvenile ("SIJ") provisions of the Immigration and Nationality Act ("INA"). 8 U.S.C. §§ 1101(a)(27)(J) & 1255(a). The SIJ provisions created a method for abused, neglected, and abandoned immigrant children to become lawful permanent residents of the United States.[1]

1. Section 1101(a)(27)(J) states:
 The term "special immigrant" means—
 (J) an immigrant who is present in the United States—
 (I) who has been declared dependent on a juvenile court located in the United States or

whom such a court has legally committed to, or placed under the custody of, an agency or department of a State and who has been deemed eligible by that court for long-term foster care due to abuse, neglect, or abandonment;

Pursuant to 8 U.S.C. § 1101(a)(27)(J), immigrant children may petition the U.S. Immigration and Citizenship Services ("CIS"), a bureau of the Department of Homeland Security ("DHS"), to be recognized as special immigrant juveniles.[2] In order to be eligible for SIJ classification, 8 U.S.C. § 1101(a)(27)(J) requires that a state court make an SIJ-predicate order, finding 1) that the child is dependent on the court or a state agency; 2) that the child is eligible for long-term foster care due to abuse, neglect or abandonment; and 3) that it would not be in the child's best interest to be returned to his or her home country. 8 U.S.C. § 1101(a)(27)(J)(I-ii). Once a state court makes an SIJ-predicate order, a child may file with CIS for SIJ-status using an I–360 petition.[3] A child that is granted SIJ status may then apply for adjustment to lawful permanent resident status under 8 U.S.C. § 1255.

However, the SIJ statute contains a provision that limits state court jurisdiction with respect to immigrant children in federal custody ("in-custody minors"). A state court may not "determine the custody status or placement" of in-custody minors unless Immigration and Customs Enforcement ("ICE"), a bureau of DHS, specifically consents to state court jurisdiction. 8 U.S.C. § 1101(a)(27)(J)(iii)(I). Defendants' policy construes this provision to require that in-custody minors obtain ICE's specific consent before proceeding to state court for an SIJ-predicate order.[4]

There are also several regulations that govern SIJ classification and SIJ-based adjustment of status. After enactment of the SIJ statute, the Attorney General enacted "age-out" regulations. *See* 8 C.F.R. §§ 204.11(c)(1), 204.11(c)(5), 205.1(a)(3)(iv)(A, C, & D). Under these regulations, a minor will "age-out" of eligibility if the child turns 21 years old before being granted SIJ status or SIJ-based adjustment, or if the child is no longer dependent on the state court or eligible for long-term foster care. 8 C.F.R. §§ 204.11(c)(1), 204.11(c)(5), 205.1(a)(3)(iv) (A, C, & D).

A SIJ undergoing removal proceedings is subject to additional regulations. Once a SIJ is in removal proceedings, CIS no longer has

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Attorney General expressly consents to the dependency order serving as a precondition to the grant of special immigrant juvenile status; except that—

(I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the actual or constructive custody of the Attorney General unless the Attorney General specifically consents to such jurisdiction; and

(II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this Act;

8 U.S.C. § 1101(a)(27)(J).

2. The Homeland Security Act of 2002 ("HSA"), Pub.L. No. 107–296, 116 Stat. 2153 (Nov. 25, 2002), transferred authority to implement the SIJ benefit provisions from the Attorney General to the Secretary of Homeland Security. HSA §§ 471(a), 451(b), and 462(c); *see also F.L. v. Thompson*, 293 F.Supp.2d 86 (D.D.C.2003).

3. The statute provides that the Attorney General must expressly consent to a state court's SIJ-predicate order serving as a basis for the granting of SIJ status. 8 U.S.C. § 1101(a)(27)(J)(iii). Since DHS has been transferred authority over the SIJ provisions, *see supra* footnote 2, it is DHS that determines grants of SIJ status.

4. *See* Pls.' Ex. 21, Thomas E. Cook, Acting Assistant Director, Adjudications Division, Memorandum for Regional Directors, Special Immigrant Juveniles—Memorandum # 2: Clarification of Interim Field Guidance (July 9, 1999) ("In the case of juveniles in INS custody, the Attorney General's consent to the juvenile court's jurisdiction must be obtained before proceedings on issuing a dependency order for the juvenile are begun. Therefore, if a juvenile court issues a dependency order for a juvenile in INS custody without first obtaining the Attorney General's consent to the jurisdiction, the order is not valid."); Pls.' Ex. 22, William R. Yates, Associate Director for Operations, Memorandum # 3–Field Guidance on Special Immigrant Juvenile Status Petitions (May 27, 2004) ("In the case of juveniles in custody due to their immigration status . . ., the specific consent must be obtained *before* the juvenile may enter juvenile court dependency proceedings; failure to do so will render invalid any order issued as a result of such proceedings.") *See also* (Def.'s Opp'n 4.).

authority to adjudicate SIJ-based adjustment applications. A SIJ in removal proceedings may only seek adjustment of status from a Board of Immigration Appeals ("BIA") or immigration judge, who have exclusive jurisdiction over persons in removal proceedings. *See* 8 C.F.R. 245.2(a)(1) & 1245.2(a)(1)(I). If a final order of removal is issued, a SIJ must make any motion to reopen removal proceedings within 90 days. 8 C.F.R. § 1003.23(b)(I).

### B. Plaintiffs' Challenges to Defendants' Interpretations of the SIJ Provisions

Plaintiffs bring this action for declaratory, injunctive, and mandamus relief from certain policies, practices, and regulations, promulgated and followed by Defendants former Attorney General Alberto Gonzalez, Secretary of Homeland Security Michael Chertoff, and the Office of Refugee Resettlement, that implement the SIJ provisions of the Immigration and Nationality Act. *See* 8 U.S.C. §§ 1101(a)(27)(J) & 1255(a). Plaintiffs are immigrant youth that have been denied specific consent to state court jurisdiction for an SIJ-predicate order, denied SIJ status or SIJ-based adjustment of status pursuant to the "age-out regulations", and/or are unable to apply for SIJ status or SIJ-based adjustment of status pursuant to the removal regulations.

Plaintiffs challenge Defendants' policy requiring in-custody minors to obtain ICE's specific consent. Plaintiffs contend that 8 U.S.C. § 1101(a)(27)(J) does not authorize Defendants to require specific consent for an SIJ-predicate order because such orders do not "determine the custody status or placement" of an in-custody minor. Defendants counter that a state court's SIJ-predicate order does alter "custody status or placement" and therefore, specific consent is required before an in-custody minor may seek an SIJ-predicate order in state court.

Plaintiffs also challenge the "age-out" regulations. *See* 8 C.F.R. §§ 204.11(c)(1), 204.11(c)(5), 205.1(a)(3)(iv) (A, C, & D). Plaintiffs claim that the regulations impose *ultra vires* eligibility requirements that cause statutorily eligible youth to "age-out" of SIJ status or SIJ-based adjustment of status. Defendants counter that the "age-out" regulations are reasonable interpretations of the SIJ provisions of the Immigration and Nationality Act, entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Finally, Plaintiffs challenge several regulations that apply to SIJs in removal proceedings. Plaintiffs argue that Defendants' regulations unlawfully deny SIJs adjudication of their adjustment of status applications. 8 C.F.R. §§ 245.2(a)(1) & 1245.2(a)(i)(1). Defendants maintain that the INA authorizes the removal regulations and that SIJs are not denied adjudication as Plaintiffs allege.

### C. Plaintiffs' Motions

On May 30, 2007, Plaintiffs moved for an order certifying the following classes under Federal Rule of Civil Procedure 23(b)(2):

All persons who are prima facie eligible for classification as SIJs pursuant to 8 U.S.C. § 1101(a)(27)(J) and:

(1) whose requests for specific consent to state court jurisdiction Defendants deny or fail to decide prior to their attaining 18 years of age;

(2) whose petitions for SIJ classification Defendants deny or revoke pursuant to 8 C.F.R, § 204.11(c)(1) or (5), or § 205.1(a)(3)(iv)(A), (C), or (D); or

(3) whose applications for SIJ-based adjustment of status Defendants refuse to adjudicate pursuant to 8 C.F.R. §§ 245.2(a)(1) and 1245.2(a)(1)(i), and 8 C.F.R. §§ 1003.2(c)(2) or 1003.23(b)(1).

At that time, the Court deferred ruling on the motion for class certification.

Plaintiffs now move for partial summary adjudication, and Defendants bring a cross-motion, to address the following issues:

(1) whether a state court order finding that an immigrant youth in federal custody is abused, neglected, or abandoned, and that it is not in the youth's best interest to return to their home country ("SIJ-predicate order"), alters the youth's "custody status or place-

ment," thereby requiring that the youth obtain the specific consent of ICE to invoke state court jurisdiction for the SIJ-predicate order;

(2) whether Defendants may lawfully deny SIJ classification and / or adjustment of status pursuant to 8 C.F.R. §§ 204.11(c)(1) or (5), and/ or 205.1(a)(3)(iv)(A), (C), or (D); and

(3) whether 8 C.F.R. §§ 245.2(a)(1) and 1245.2(a)(1)(i) violate 8 U.S.C. § 1101(a)(27)(J) or deny proposed class members due process as applied to SIJs who become eligible for adjustment of status more than 90 days after being ordered removed.

(Pls.' Mot. 5.)

The Court consolidates the motions to rule together on class certification and partial summary adjudication. The Court first considers the motion for class certification, and then turns to the Plaintiffs' motion for partial summary adjudication and Defendants cross-motion for summary judgment.

## II. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### A. *Rule 23 Standard For Class Certification*

Federal Rules of Civil Procedure Rule 23 outlines a two-step process for determining whether class certification is appropriate. First, Rule 23(a) sets forth four prerequisites that must be met for any class: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a); *see Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). These four requirements are often referred to as numerosity, commonality, typicality, and adequacy. *See General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *In re Adobe Sys., Inc. Sec. Litig.,* 139 F.R.D. 150, 153 (N.D.Cal.1991).

Assuming the requirements of Rule 23(a) are satisfied, the party seeking class certification must also demonstrate that the action falls within one of the three kinds of actions permitted under Rule 23(b). *See* Fed. R.Civ.P. 23(b); *In re Adobe Sys.,* 139 F.R.D. at 153. An action is proper under Rule 23(b)(2) if the defendant "has acted (or refused to act) in a manner applicable to the class generally, thereby making injunctive or declaratory relief appropriate with respect to the class as a whole." Schwarzer, *supra,* at 10–63. Rule 23(b)(2) actions are proper when the class primarily seeks injunctive or declaratory relief. *See id.* ¶¶ 10:399–400 at 10–66. Recovery of damages is generally not available in a Rule 23(b)(2) class action. *Id.*

In evaluating a motion for class certification, "[t]he court is bound to take the substantive allegations of the complaint as true." *In re Unioil Sec. Litig.,* 107 F.R.D. 615, 618 (C.D.Cal.1985) (internal quotations omitted). Moreover, "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (*quoting Miller v. Mackey Int'l,* 452 F.2d 424, 427 (5th Cir.1971)). Nonetheless, the plaintiffs bear the burden of establishing each of the required elements for class certification. *See In re Unioil Sec. Litig.,* 107 F.R.D. at 617 (*citing In re Northern Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.,* 693 F.2d 847, 854 (9th Cir.1982)). At the class certification stage, the evidence only needs to enable the court to make a "reasonable judgment" that Rule 23 requirements have been met. *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975) (holding that "so long as [a district judge] has sufficient material before him to determine the nature of the allegations, and rule on compliance with the Rule's requirements, and he bases his ruling on that material, his approach cannot be faulted because plaintiffs' proof may fail at trial").

### B. *Analysis*

The proposed class definition consists of three subclasses:

(1) minors whose requests for specific consent to state court jurisdiction Defendants deny or fail to decide prior to their attaining 18 years of age ("specific consent subclass");

(2) youth whose petitions for SIJ classification Defendants deny or revoke pursuant to 8 C.F.R. §§ 204.11(c)(1) or (5), or 205.1(a)(3)(iv)(A), (C), or (D) ("age-out subclass"); and

(3) youth whose applications for SIJ-based adjustment of status Defendants refuse to adjudicate pursuant to 8 C.F.R. §§ 245.2(a)(1) and 1245.2(a)(1)(i), and 8 C.F.R. §§ 1003.2(c)(2) or 1003.23(b)(1) ("removal proceedings subclass").

The Court will address each of these proposed subclasses in turn. *See Betts v. Reliable Collection Agency, Ltd.,* 659 F.2d 1000, 1005 (9th Cir.1981) (noting that "each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action.")

### 1. *Specific Consent Subclass*

The proposed class definition for the specific consent subclass is as follows: minors whose requests for specific consent to state court jurisdiction Defendants deny or fail to decide prior to the their attaining 18 years of age ("specific consent subclass").

#### a. *Numerosity*

■ Plaintiffs must first demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). To establish numerosity, plaintiffs are not required to demonstrate the precise number of class members. *Welling v. Alexy,* 155 F.R.D. 654, 656 (N.D.Cal.1994). Although plaintiffs need not allege the exact number or identity of class members to satisfy the numerosity requirement, mere speculation as to the number of parties involved is insufficient. *Nguyen Da Yen v. Kissinger,* 70 F.R.D. 656, 661 (N.D.Cal.1976). However, "where the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-*

*Hernandez v. Smith,* 541 F.Supp. 351, 371 (C.D.Cal.1982). When the class is not so numerous, courts should consider other factors such as "the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought." *Jordan v. Los Angeles County,* 669 F.2d 1311, 1319 (9th Cir.1982), vacated on other grounds, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).

Here, although they cannot provide the precise number of potential class members, Plaintiffs maintain that hundreds of individuals that sought specific consent, had ICE deny or fail to decide those requests by the time the individual turned 18 years old. (Pl.'s Mot. 11.) Defendants argue that Plaintiffs have only identified seven instances of individuals that turned 18 years old while their specific consent requests were pending. (Def.'s Opp. 12–13.)

However, Plaintiffs counter with evidence that at least 164 in-custody minors requested specific consent between January 1, 2004 to October 2006. The Court notes that Plaintiffs' challenge includes a claim that the statute does not permit Defendants to require specific consent unless the state court will alter custody status or placement. As Defendants require specific consent of all in-custody minors seeking a state court's SIJ-predicate order, this claim would belong to any person that Defendants required to request specific consent. The 164 requests identified by Plaintiffs certainly satisfies numerosity.

Further, out of the 164 identified specific consent requests, Defendants denied at least 40 for unspecified reasons and closed at least another 7 because the applicant turned 18 years old before they decided on the consent request.[5] (Pl.'s Mot. 12.) At the very least, there are at least 47 members of this first subclass. The evidence provides the Court with a reasonable estimate of the class size for this subclass. The impracticability of joinder is further supported by the fact that members of the proposed class are geograph-

---

5. In its reply brief, Plaintiffs maintain that ICE denied or failed to decide 58 requests for specific

consent prior to the applicant's turning 18 years old. (*See* Pl.'s Ex. 29.)

ically dispersed and many are now in foreign countries following deportation. Also, according to Plaintiffs, the class may expand because Defendants continue to insist that their specific consent is required before any in-custody minor may proceed to state court. On this basis, the Court believes that joinder is impracticable and that the specific consent subclass satisfies the numerosity requirement.

### b. *Commonality*

■ Plaintiffs must also demonstrate "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Commonality requires only that each class member be similarly situated in sharing common questions of law or fact. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 914 (9th Cir.1964). Individual variation among plaintiffs' questions of law and fact does not defeat underlying legal commonality: "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). Courts have found that a single common issue of law or fact is sufficient to satisfy the commonality requirement. *Id.* at 1019–20; *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 655 (C.D.Cal.2000).

Plaintiffs argue that the claims proposed for class certification clearly present shared legal issues regarding a common course of conduct. They identify four questions that are common to the subclass: (1) whether Defendants may lawfully demand that SIJ applicants obtain specific consent, even where a state court will not determine a minor's custody status or placement; (2) whether Defendants can determine that a minor requesting specific consent has been abused, abandoned or neglected within the meaning of state law; (3) whether Defendants may lawfully delay deciding a timely presented, and properly supported, request for specific consent, such that the minor turns 18 while his or her request of pending; and (4) whether Defendants' denial of requests for specific consent, without adherence to procedures comparable to those fol-

lowed by a state juvenile court, violates due process. (Pl.'s Reply 5.)

Defendants counter that Plaintiffs have broadly challenged the specific consent procedures, but have failed to demonstrate the existence of a class of persons who share the same claims or suffered the same injury as the named Plaintiffs, "such that the [Plaintiffs'] claims and the class claims will share common questions of law or fact." (Def.'s Opp. 14–15, *citing Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).) Defendants further argue that these legal claims lack commonality because of wide factual variation. (*Id.* 15.)

In this case, Plaintiffs raise several claims that challenge Defendants' policies and practices with respect to the specific consent requirement. A common legal question is raised by Plaintiffs' claim that the SIJ statute does not permit application of the specific consent requirement if a state court's judgment will not alter the minor's "custody status or placement." This claim asks the Court to decide whether Defendants are acting outside their authority under the SIJ statute by requiring specific consent of in-custody minors under such circumstances, and whether a state court's dependency judgment alters the minor's custody or placement. Commonality is established because this claim challenges Defendants' statutory authority for requiring specific consent even if a state court dependency judgment does not alter custody status or placement. Similarly, claims of due process violations and unreasonable delay also are common legal claims directed at Defendants' specific consent policy. Where Plaintiffs raise a common questions of law, Defendants' concerns about multiple legal issues and factual variation do not defeat commonality. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998).

### c. *Typicality*

■ Rule 23(a) also requires that Plaintiffs demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). As Judge Rymer of the Central District of California explained:

A plaintiff's claim meets [the typicality] requirement if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory. The test generally is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.

*Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985). Where an action challenges a policy or practice, named plaintiffs that suffer one specific injury from the practice may represent a class suffering additional injuries, so long as all the injuries are shown to result from the practice. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157–59, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

Defendants argue that Plaintiffs have failed to demonstrate which of the ten named Plaintiffs represent the proposed subclass of persons challenging Defendant's specific consent procedures. Defendants also argue that Plaintiffs have not shown how the representative Plaintiffs have the same claims or suffered the same injury as the members of the putative subclass. (Def.'s Opp. 16–17.)

Plaintiffs disagree with Defendants' contention that the proposed representatives of the class—Morales, Li and Casa Libre Youth Shelter—do not have claims typical of those of the class. Plaintiffs cite *Smith v. Univ. of Wash. Law. Sch.*, 2 F.Supp.2d 1324, 1342 (W.D.Wash.1998), for the proposition that "when it is alleged that the same unlawful conduct was directed at, or affected both, the named Plaintiff and the class to be represented, the typicality requirement is usually satisfied, *irrespective of varying fact patterns which underlie individual claims.*" (Pl. Reply 10.)

Plaintiffs allege that ICE has adopted a common set of specific consent policies and practices that violate the Immigration and Nationality Act. Plaintiffs' statutory claim is that Defendants may not require specific consent if the state court does not alter "custody status or placement." Additionally, Plaintiffs raise due process and unreasonable delay claims. Typicality is established because these legal theories apply to all in-custody minors that sought and did not receive specific consent to obtain SIJ-predicate orders in state court. Also, Plaintiffs and class members share the specific injury of loss of SIJ eligibility. Thus, the typicality requirement is satisfied for the statutory claim.

#### d. *Adequacy*

■ Finally, Plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Adequacy of representation is necessary to provide due process of law to unnamed class members that will be bound by the judgment in the representative's action. *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir.1994). "Parties are generally considered to be adequate class members if there are no conflicts of interest between the representatives and class members and if the Court is persuaded that counsel for the representatives will vigorously pursue the action." *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 153 (N.D.Cal.1991) *(citing Gen. Tel.*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982))*.

Defendants argue that named Plaintiffs will inadequately represent the class, as both Plaintiffs Morales and Li delayed seeking specific consent for several months after being placed in federal custody and obtaining counsel. Because named Plaintiffs only sought specific consent one month and three months before turning eighteen years old, this jeopardizes the subclass's chance of success on their claims, and prejudices the other class members. (Def.'s Opp. 17–19.)

Plaintiffs disagree. Plaintiffs reiterate that there is no evidence to show that there is any conflict between Plaintiffs and the other class members. The named Plaintiffs are seeking the same injunctive and declaratory relief for both the class and themselves, which proves that there is no conflict between named Plaintiffs and the other class members. Also, Plaintiffs argue that there is no evidence to suggest that Plaintiffs or their counsel will fail to vigorously prosecute this

action on behalf of the class. (Pl.'s Mot. 18–19.)

The Court finds that this prong is satisfied. First, Plaintiffs' lead counsel are sufficiently qualified to pursue this action for all three subclasses. They are employed by a non-profit organization specializing in federal litigation on behalf of immigrants and refugees and have previously successfully litigated class actions. Second, Plaintiffs' statutory or due process claims to turn on factual differences the class representatives and class members share identical claims and an interest in class-wide relief from the allegedly unlawful requirement of specific consent. Defendants' assertion of factual differences in the timing of Plaintiffs' specific consent requests appears relevant only to Plaintiffs' unreasonable delay claim. Nevertheless, the Court does not consider these factual differences to indicate any inadequacy of the class representatives.

### e. 23(b)(2)

■ In addition to satisfying the Rule 23(a) requirements, a certifiable class must also meet the requirements set out in Fed. R.Civ.P. Rule 23(b). Plaintiffs maintain that this class action satisfies Rule 23(b)(2) requirements: "the party opposing the class has acted (or refused to act) in a manner applicable to the class generally, thereby making injunctive or declaratory relief appropriate with respect to the class as a whole." Identification of all class members is not necessary under Rule 23(b)(2). The rule is appropriate for cases where plaintiffs bring a class action on behalf of a "shifting population." *Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir.2004).

Plaintiffs argue that Defendants have implemented policies and procedures that, *inter alia*, unlawfully require specific consent under circumstances when it is not statutorily required, unreasonably delay the adjudication of applications for SIJ status and adjustment of status, pre-judge an in-custody minor's underlying eligibility for dependency protection and SIJ classification, and do not provide due process. Plaintiffs maintain that its challenges to Defendants' policies and procedures are thus suitable for class-wide relief. (Pl.'s Mot. 20.)

Defendants, however, argue that the subclass is not maintainable under Rule 23(b)(2). Defendants contend that Plaintiffs' arguments raise a generic due process claim that will require individualized adjudications for each class member. As such, Defendants argue that its policies or practices are not "generally applicable" to the class as required by Rule 23(b)(2). (Def.Opp.)

The Court finds that Plaintiffs have met the requirements for a Rule 23(b)(2) class action. Plaintiffs' claims challenge Defendants' common set of policies and practices on specific consent that are applied generally to SIJ-eligible in-custody minors. While Defendants contend that certification of the subclass is inappropriate because it will implicate individualized adjudications, the Court disagrees: Plaintiffs are claiming that Defendants' specific consent policy is impermissible under the statute, violates due process, and causes unreasonable delay. This is a complaint about the legality of Defendants' conduct with respect to the class of persons that they require to obtain specific consent. The claims will not turn on individualized adjudications. Because Plaintiffs' claim seeks injunctive relief that will change Defendants' policy applicable to the class as a whole, Plaintiffs have met their burden under Rule 23(b)(2).

### 2. *Age-out subclass*

The proposed subclass definition for the age-out subclass is as follows: youth whose petitions for SIJ classification Defendants deny or revoke pursuant to 8 C.F.R. §§ 204.11(c)(1) or (5), or 205.1(a)(3)(iv)(A), (C), or (D) ("age-out subclass").

#### a. *Numerosity*

■ Plaintiffs indicate an inability to precisely identify the membership size of the age-out subclass because Defendants do not maintain records of the number of persons that submit SIJ applications and have those applications denied or left undecided when the applicant turns eighteen. (Pl. 16–17; *see* Pl.'s Ex. 24). Nevertheless, Plaintiffs interpret Defendants' estimates of 2,258 SIJ ap-

plications between 2000 and 2006 to suggest approximately 375 SIJ applications annually. (Pl. Mot. 16–17; Pl.Ex. 27.) Plaintiffs also point to statistics compiled in 1990 that the majority of detained alien juveniles are 16 or 17 years old, which means on the verge of aging-out from SIJ eligibility. Further, Plaintiffs offer the declarations of immigration attorneys to show long delays in adjudication of SIJ applications and instances of SIJ-eligible youth that lost eligibility due to the age-out regulations. On this basis, Plaintiffs argue that "many hundreds of abused, abandoned, and neglected youth" are subject to the age-out regulations. (Pl.'s Mot. 13.)

Defendants argue that Plaintiffs speculate as to class numerosity. (Def.'s Opp. 22.) While Defendants are correct that Plaintiffs' statistics are imprecise, this shortcoming is not dispositive. Courts have found joinder impracticable when it was difficult to identify the proposed class members. *See Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir.1981) (numerosity found in race discrimination suit where neither party could identify class members because defendant-employer did not track applicants' race); *Israel v. Avis Rent–A–Car Sys., Inc.*, 185 F.R.D. 372, 378 (S.D.Fla.1999) (numerosity established where the necessary information to identify class members was within defendant's control).

Here, the government has represented to Plaintiffs that they have not tracked the number of persons denied SIJ classification or SIJ-based adjustment of status due to the age-out regulations. The inability to identify those individuals that have lost eligibility based on their age indicates the impracticability of joinder. The geographical dispersion of class members and the addition of class members in the future due to the continuing application of the age-out regulations further support impracticability of joinder.

Plaintiffs also offer additional evidence that supports a "reasonable judgment" that joinder is impracticable. *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975). In particular, Plaintiffs' evidence of attorneys that have worked with immigrant children, many of whom sought SIJ classification and adjustment of status subject to the age-out

regulations, suggests a sufficient number of class members to satisfy numerosity. Therefore, the Court finds sufficient evidence of numerosity.

### b. *Commonality*

■ Plaintiffs maintain that common legal issues unite this subclass. It is alleged that Defendants have promulgated and adhered to the age-out regulations that are inconsistent with the SIJ statute. Further, Plaintiffs allege that Defendants unreasonably delay decisions on SIJ applications and adjustment of status, which causes class members to age-out from eligibility. (Pl.'s Reply 14–15.)

Defendants concede that Plaintiffs and class members share the outcome of lost eligibility. Even so, where the age-out outcome is not the result of a common policy or practice, but rather a diverse set of statutory requirements, regulations, and agency policies and practices, Defendants assert that Plaintiffs cannot establish commonality. (Def.'s Opp. 22–23.)

The Court, however, reads the Plaintiffs' claims to attack a set of common statutory requirements, regulations, and agency policies and practices that result in unreasonable delay. CIS's statutory authority to enact and follow the age-out regulations. (Pl.'s Reply 14.) Commonality is established as Plaintiffs present common legal issues independent of class members' factual differences.

### c. *Typicality*

■ Similarly, Plaintiffs' claims that Defendants lack statutory authority to enact and follow the age-out regulations, and of a common policy or practice of delaying adjudication of SIJ applications until youth age-out of eligibility, are typical of the class. Plaintiffs have the same claim, suffer the same injury, and have the same interest in seeking injunctive relief, factual differences notwithstanding.

### d. *Adequacy*

■ The Court finds that Plaintiffs will adequately represent the age-out subclass. Where Plaintiffs challenge Defendants' au-

thority to enact and implement the age-out regulations, and the application of those regulations, all class members that lost SIJ or SIJ-based adjustment of status eligibility are similarly situated with respect to those claims. There is no conflict between Plaintiffs and class members with respect to that claim. Further, Plaintiffs seek injunctive relief for the whole subclass. Thus, adequacy of representation is established.

### e. *23(b)(2)*

■ In this case, the age-out regulations are "generally applicable to the class." Plaintiffs' claims against those regulations challenge a generally applicable course of conduct directed at class members. Where Plaintiffs' claim challenge common policies or practices and seek generally applicable injunctive relief, this satisfies the requirements of Rule 23(b)(2).

### 3. *Removal proceedings subclass*

The proposed class definition for the removal proceedings subclass is as follows: youth undergoing removal proceedings whose applications for SIJ-based adjustment of status Defendants refuse to adjudicate pursuant to 8 C.F.R. §§ 245.2(a)(1) and 1245.2(a)(1)(i), and 8 C.F.R. §§ 1003.2(c)(2) or 1003.23(b)(1) ("removal proceedings subclass"). In challenging class certification for this subclass, Defendants raise an argument that Plaintiffs lack standing. The Court reviews the standing argument before turning to class certification standards.

### a. *Standing*

■ In order to maintain a class action, named plaintiffs must demonstrate that they have personally sustained an injury which results from a challenged statute or government conduct. *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir.2001). To establish standing, the plaintiffs must show three elements: (1) injury (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Bras v. Cal. Pub. Util. Comm.*, 59 F.3d 869, 872 (9th Cir.1995) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d

351 (1992)). A plaintiff may establish standing by showing an injury traceable to a written policy or a pattern of official conduct. *Armstrong*, 275 F.3d at 860–61.

Defendants argue that Plaintiffs have failed to establish standing to sue on behalf of this subclass because they cannot trace an injury to the challenged regulations or conduct. They attribute the lack of standing to Plaintiffs' "misrepresentation" of the regulations that govern removal proceedings. (Def.'s Opp. 29). The misrepresentation in question is Plaintiffs' assertion that youth in removal proceedings cannot have their SIJ-based applications for adjustment of status heard 90 days after an order of removal.

Once youth are in removal proceedings, USCIS no longer has authority to adjudicate those applications because a BIA or immigration judge has exclusive jurisdiction. 8 C.F.R. § 204.11(b)(2). An immigrant youth must make a motion to reopen removal proceedings within 90 days of the final order of removal. 8 C.F.R. § 1003.23(b)(1). According to Plaintiffs' motion, youth that become eligible for SIJ-based adjustment of status more than 90 days after a final removal order are barred from having SIJ-based adjustment of status applications heard because current regulations do not allow BIA or immigration judges to reopen proceedings 90 days after an order of removal. (Pl.Mot. 7–8.)

Defendants, however, are correct that current regulations provide a BIA or immigration judge with discretion to reopen a youth's case "at any time", which would include after the 90 day deadline set for youth to move for reopening of their removal proceedings. *See* 8 C.F.R. §§ 1003.2(a) and 1003.23(b)(1). Also, a case may be reopened when the motion is "agreed upon by all parties and jointly filed." 8 C.F.R. §§ 1003.2(a), 1003.23(b)(1), 1003.23(c)(3)(iii), and 1003.23(b)(4)(iv).

In their motion, Plaintiffs seem to misstate the regulations when they argue that the BIA or an immigration judge may not reopen a youth's case 90 days after a removal order.

In their reply,[6] however, Plaintiffs appear to accept Defendants' interpretation of the regulations. Plaintiffs then explain that they claim youth are entitled to adjudication of adjustment of status applications, whether or not Defendants join a motion to reopen in removal proceedings. Finally, Plaintiffs seem to argue that named plaintiff Garrido–Martinez, the sole named plaintiff for this subclass, has standing because Defendants refused to join a motion to reopen removal proceedings, resulting in the motion's rejection and plaintiff Garrido–Martinez's injury. (Pls.' Reply 19.)

The nature of Plaintiffs' claim is unclear, and this complicates the Court's ability to rule on the removal subclass. Nevertheless, the Court understands Plaintiffs to argue that Defendants' removal regulations prevent immigrant youth from obtaining SIJ-based adjustment of status, and therefore, are inconsistent with the SIJ statute. Plaintiffs challenge both the exclusive jurisdiction of BIA or immigration judges for the SIJ-based adjustment of status applications of youth in removal proceedings and the 90–day deadline for youth to move for reopening of their cases. Moreover, Plaintiffs appear to assert that Defendants have a common practice of refusal to join in reopening youth's cases 90 days after removal, that this refusal prevents youth from having their cases reopened, and that youth therefore do not have their SIJ-based adjustment of status applications heard.

Plaintiff Garrido–Martinez certainly suffered a personal injury because his SIJ-based adjustment of status application was not adjudicated. Here, the dispositive question on standing is whether that injury can be traced to Defendants' regulations, policies, or practices. Certainly, Garrido–Martinez has standing to challenge Defendants' statutory authority to apply the removal regulations to SIJ-eligible youth: if Defendants lack such authority, then the application of those regulations to Garrido–Martinez caused him injury in depriving him of adjudication of his SIJ-based adjustment application. Further, Garrido–Martinez has standing to challenge Defendants refusal to join his motion to reopen: if Defendants had joined in a motion to reopen, Garrido–Martinez's case would have been reopened. This would have allowed the BIA or immigration judge to adjudicate his SIJ-based adjustment of status application.[7]

On this interpretation of Plaintiffs' claims, the Court accepts that Plaintiff Garrido–Martinez has satisfied the requirement of standing by showing an injury traceable to the challenged government conduct. The Court now turns to the issue of class certification for this subclass.

### b. *Rule 23(a) Requirements*

#### i. *Numerosity*

■■■ Although Plaintiffs need not identify a precise class size, especially when the number of class members may be unknown, they still must support a reasonable estimate of the class size or demonstrate the impracticability of joinder. Unlike in the previous subclasses where Plaintiffs provided a reasonable basis for the inference that numerosity was met, the only basis provided by Plaintiffs for the numerosity of this subclass is a declaration by Plaintiffs' counsel asserting that "hundreds" of immigrant youth subject to removal proceedings each year who may seek SIJ-based adjustment of status 90 days after a removal order. (Pl.'s Mot. 16.) Also, Plaintiffs do not offer arguments to support the impracticability of joinder. Therefore, the Court finds that numerosity is not met.

---

6. Plaintiffs first respond that Defendants' standing argument improperly addresses the merits of their claim. (Pl.'s Reply 19.) Contrary to Plaintiffs' contention, the Court is bound to ensure that a named Plaintiff has standing to sue. This inquiry requires the Court to determine whether a plaintiff has suffered an injury traceable to a defendants' conduct, not analysis of the merits of a claim.

7. There is a counterargument not raised by Defendants that Garrido–Martinez's injury was not solely caused by Defendants' refusal to join the motion to reopen because the judge's refusal to reopen the case *sua sponte* could equally be the cause of the injury. However, based on the Court's reading of Plaintiffs' argument, once the Defendants refused to join the motion to reopen, it is common practice that the judge too will not move *sua sponte* to reopen the case despite their discretion to do so.

### ii. *Commonality*

■■ In both their motion and reply, Plaintiffs are unclear as to the claims that would form the basis for establishment of commonality. In Plaintiffs' motion, they seem to challenge that the regulations give exclusive jurisdiction to the BIA or immigration judge to adjudicate SIJ-based adjustment applications, or that the regulations set a 90 day limit for youth to bring motions to reopen. In their reply, Plaintiffs focus on a policy or practice where Defendants refuse to join motions to reopen beyond the 90 day deadline.

Despite Plaintiffs' shifting conception of this subclass's claims, commonality is established. Plaintiffs' claim that Defendants' removal regulations, as applied to members of the class, deprive SIJ-eligible youth in removal of adjudication of their SIJ-based adjustment applications, is common to class.

### iii. *Typicality*

■■ Similarly, Plaintiffs are unclear as to the claims that would form the basis for establishment of typicality. The Court has difficulty in determining whether Plaintiffs' claims are typical when it is not precisely clear which claims Plaintiff raises for this class. It would be possible that a claim by Plaintiff that Defendants have a common policy of refusal to join motions to reopen could be typical of a class if Plaintiffs were to show the Court that other class members in fact have these claims. However, Plaintiffs have not made this showing. At this time, the Court is unable to find that Plaintiff has claims typical of this class.

### iv. *Adequacy*

Plaintiff could be an adequate representative for a class asserting a claim against a common policy or practice by Defendants of refusing to join motions to reopen. Plaintiff likely would not have a conflict with this delimited group of class members. However, because other requirements have not been met, this is insufficient to meet the threshold Rule 23(a) requirements. Because at this time the Court is inclined to find that the removal subclass does not meet the Rule 23(a) requirements for class certification, the Court need not consider Rule 23(b) requirements.

## III. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY ADJUDICATION AND DEFENDANTS' CROSS–MOTION FOR SUMMARY JUDGMENT

Summary adjudication, like summary judgment, is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment or summary adjudication, a court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 253, 106 S.Ct. 2505.

### A. *Specific Consent*

■■ Section 1101(a)(27)(J)(iii)(I) provides: "No juvenile court has jurisdiction to determine the *custody status or placement* of an alien in the actual or constructive custody of the Attorney General unless the Attorney General specifically consents to such jurisdiction." 8 U.S.C. § 1101(a)(27)(J)(iii)(I) (emphasis added). It is Defendants' undisputed policy to require that in-custody minors obtain ICE's specific consent to state court jurisdiction, prior to seeking an SIJ-predicate order in state court. (Defs.' Opp' n 4.)

#### 1. *Statutory Interpretation of the Specific Consent Requirement*

##### a. *The Plain Language of 8 U.S.C. § 1101(a)(27)(J) Requires Specific Consent Only If a State Court Determines The Custody Status or Placement of a Minor in Federal Custody.*

When interpreting a statute, the Court must "look first to the plain language of the

statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress." *United States v. Mohrbacher,* 182 F.3d 1041, 1048 (9th Cir.1999) (internal quotation and citation omitted). The Supreme Court has explained that "jurisdictional statutes [must not be given] a more expansive interpretation than their text warrants, but it is just as important not to adopt an artificial construction that is narrower than what the text provides." *Exxon Mobil Corp. v. Allapattah Servs.,* 545 U.S. 546, 558, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005).

In this case, the Court is asked to interpret the scope of the SIJ specific consent requirement.[8] The specific consent requirement is unambiguously limited to instances when a state court will "determine ... custody status or placement." 8 U.S.C. § 1101(a)(27)(J)(iii)(I). Yet the statute does not define "custody status or placement." Where a statutory term is not defined in the statute, a court should give the term its ordinary meaning. *Mohrbacher,* 182 F.3d at 1048. The term "custody" is defined as the "immediate care and control (as over a ward or a suspect) exercised by a person or an authority." Merriam–Webster Online Dictionary, *available* at http://www.m-w.com. The term "status" is defined as "the condition of a person or thing in the eyes of the law."[9] *Id.* The term "placement" is defined as the "assignment of a person to a place." *Id.*

The logical reading of "custody status" is that it refers to whom has care or control of a person; in other words, who is the custodian. The federal government is itself custodian when a minor is in its actual, physical custody or in its constructive custody, which can only mean that the federal government has arranged for a third-party to care for a person, but itself maintains control. When

the federal government is itself an immigrant minor's custodian, the statute is clear that a state court lacks jurisdiction to alter such custody absent the federal government's specific consent. Similarly, when the federal government is itself an immigrant minor's custodian, the statute does not provide state courts with jurisdiction to alter such custody by seeking to place an immigrant minor in a foster home or other location, absent the specific consent of the federal government which has custody and therefore makes placement decisions. *See Deal v. United States,* 508 U.S. 129, 132, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993) ("[T]he meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used.").

The specific consent requirement, however, does not apply to all SIJ-predicate orders, as is Defendants' policy. After all, a state court's SIJ-predicate order-that includes findings of dependency, abuse, neglect, and abandonment, and the child's best interests—*does not* alter a minor's custody status or placement, *unless* the state court additionally seeks to alter a particular child custody arrangement, assigns the child to a foster home, or takes some similar action. This reading is proper because state courts routinely take actions with respect to minors that are unrelated to custody or placement decisions. Congress recognized as much in the statute's plain language by explicitly identifying dependency, commitment, and custody as distinct state court actions. *See* 8 U.S.C. § 1101(a)(27)(J)(i) (stating that an SIJ-predicate order may declare a minor dependent on the court, legally commit a minor to a state agency, or place the minor under the custody of a state agency). Basic principles of statutory construction, along with a common sense understanding of state court

8. The Court notes at the outset that the Third Circuit's decision in *Yeboah v. United States Dept' of Justice,* 345 F.3d 216, 221 (3d Cir.2003), does not address the issue raised here. In *Yeboah,* the court reviewed ICE's denial of an in-custody minor's request for specific consent under an abuse of discretion standard. The court found no abuse of discretion where ICE followed agency policy. *Id.* at 223–25. However, the court was not presented with the question whether ICE policy's requirement of specific consent exceeded

the requirement as written in the text of the statute. Where that is the question presented in this case, *Yeboah* is not on point.

9. Merriam–Webster Online Dictionary, *available at* http://www.m-w.com. Congress likely considered "custody status" distinct from "placement" because some minors are in Defendants' custody, but Defendants then place minors with another entity, such as a foster home.

child welfare determinations, indicate that SIJ-predicate orders are not the same as orders determining custody status or placement. *See, e.g., Bedroc Ltd. v. United States,* 314 F.3d 1080, 1088 (9th Cir.2002) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks omitted).

The Court's reading also furthers several important Congressional objectives. Congress created SIJ classification to protect abused, neglected, and abandoned immigrant youth through a process allowing them to become legal permanent residents. When Congress amended the statute in 1997, it added the specific consent requirement. 8 U.S.C. § 1101(a)(27)(J)(iii)(I).[10] In doing so, Congress reasonably prohibited state courts from interfering with a minor in the actual or constructive custody of the federal government. This prohibition is logical because the federal government may have a minor in its custody as a witness to a crime, pursuant to a criminal investigation, or due to immigration status. In short, for minors in the actual or constructive custody of the federal government, the federal government appropriately maintains control over minors' custody or placement where important federal interests are at stake, and a state court may only alter that custodial status with the federal government's consent.[11]

At the same time, by limiting the specific consent requirement to custody and placement decisions, Congress appropriately reserved for state courts the power to make child welfare decisions, an area of traditional state concern and expertise. *See Ankenbrandt v. Richards,* 504 U.S. 689, 702, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) (recognizing that "the whole subject of domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States") (internal quotation and citation omitted). The SIJ statute affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests.

Essentially, the specific consent requirement balances competing federal and state interests. Congress has plenary power over immigration. *See, e.g., Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). State courts have general jurisdiction over child welfare matters. *See Ankenbrandt,* 504 U.S. at 702, 112 S.Ct. 2206; *see also Reno v. Flores,* 507 U.S. 292, 312 n. 7, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). The specific consent requirement accommodates this "dual sovereignty" of the federal government and states. *See, e.g., Printz v. United States,* 521 U.S. 898, 918–19, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1996); *Tafflin v. Levitt,* 493 U.S. 455, 458–60, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990).[12] As state courts are bound to

---

**10.** In 1997, Congress became concerned that visiting students were abusing the SIJ process and amended the SIJ statute to "limit the beneficiaries of this provision to those juveniles for whom it was created, namely abandoned, neglected, or abused children ...." H.R. Rep. No. 105–405, at 130 (1997). However, this rationale is only mentioned in connection with Congress's adoption of the 8 U.S.C. § 1101(a)(27)(J)(iii) requirement that "the Attorney General [must] expressly consent[] to the dependency order serving as a precondition to the grant of special immigrant juvenile status...." *See id.* The specific consent requirement appears to have been adopted for other, unstated reasons.

**11.** Although an SIJ-predicate order makes an immigrant minor eligible for SIJ classification, the federal government maintains ultimate authority whether to grant SIJ status under the aforementioned express consent provision. 8 U.S.C. § 1101(a)(27)(J)(iii).

**12.** Since the Court finds the statute to limit the specific consent requirement, the Court does not address the constitutional implications of a statutory provision that would always require specific when a minor sought state court jurisdiction for an SIJ-predicate order. Although Congress may be entitled to enact a requirement of Defendants' specific consent for a minor in federal custody to invoke state juvenile court jurisdiction, the Court need not consider the issue because the statute as written does not wholly condition state juvenile court jurisdiction on Defendants' specific consent. *See Bates v. Dow Agrosciences L.L.C.,* 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005) ("In areas of traditional state regulation, [the Supreme Court] assume[s] that a federal statute has not supplanted state law unless Congress has made such an intention 'clear and manifest.' ").

enforce state law in a fashion that does not conflict with federal law, *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984), it places limits on the scope of state court actions that may be taken, absent specific consent, with respect to immigrant minors in federal custody.

Ultimately, Defendants' reading of the statute, always prohibiting an in-custody minor from seeking an SIJ-predicate order unless he or she obtains ICE's specific consent, is inconsistent with the plain language of the statute. By explicitly adopting language that limited the specific consent requirement, Congress expressed a preference to exclude Defendants' overbroad interpretation. *See TRW Inc. v. Andrews*, 534 U.S. 19, 28, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (holding against judicial implication of an exception more expansive than the text of the statute). Had Congress intended to adopt Defendants' construction, Congress had the option to effectuate such intent by a clear statement that no juvenile court has jurisdiction over an alien in the actual or constructive custody of the Attorney General unless the Attorney General specifically consents to such jurisdiction. Congress did not adopt such broad language. Instead, Congress adopted language that limits Defendants' authority to require specific consent, granting the power for instances when a state court will alter custody status or placement.

The Court notes that its reading avoids the significant due process concerns implicated by Defendants' blanket policy of requiring specific consent. *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988) (indicating that a court's reasonable interpretation of a statute that avoids constitutional problems is appropriate, even though an alternative construction is possible). Due process protections apply to determinations of benefits. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Congress has conferred the opportunity to apply for SIJ status on immigrant youth deemed eligible by state court order. It is Defendants' policy to review specific consent requests based upon whether a child has been abused, neglected, or abandoned. (Pl.'s Ex. 38, Deposition of Mary Y. Evans, August 30, 2007, at 22.). The undisputed evidence raises questions whether Defendants provide adequate procedural due process protections to in-custody minors that seek specific consent.[13] The Court's interpretation alleviates the need to address Plaintiffs' due process and unreasonable delay claims.

### b. The Legislative History is Not Controlling And is Ambiguous.

Because the Court finds the statutory text to clearly limit the specific consent requirement as articulated above, "legislative history is irrelevant to interpretation of [this] unambiguous statute." *Davis v. Michigan Dept. Of Treasury*, 489 U.S. 803, 808 n. 3, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). Nevertheless, the Court notes that the legislative history relied upon by Defendants conflicts with the statutory language. *See Exxon Mobil Corp.*, 545 U.S. at 568–71, 125 S.Ct. 2611 (2005) (finding legislative history problematic as a tool of statutory interpretation where it expresses intent contrary to plain language of the statute).

To argue for its reading of the specific consent requirement, Defendants focus on a single statement from the House Report on the 1997 amendments: "[I]n order to preclude State juvenile courts from issuing dependency orders for juveniles in the actual or constructive custody of the INS, the modified provision removes jurisdiction from juvenile courts to consider the custody status or placement of such aliens unless the Attorney General specifically consents to such jurisdiction." H.R.Rep. No. 105–405, at 130 (1997).

In the face of clear statutory language to the contrary, the Court finds the legislative history unreliable. The House Report statement relied upon by Defendants is ambiguous in suggesting that a removal of state

---

**13.** The ICE officer responsible for deciding specific consent requests admitted that she did not know of standards articulating abuse, neglect, or abandonment; that there is no standard of proof for granting requests; and that denials of specific consent may not be appealed. (Pl.'s Ex. 38, Deposition of Mary Y. Evans, August 30, 2007, at 18, 20–22, 65.)

juvenile court jurisdiction for dependency orders would be effected by statutory language that clearly does not accomplish such a broad legislative objective. In accordance with the canons of statutory interpretation, the Court will not allow an isolated statement in the House Report to undermine the legislative intent unambiguously expressed by the statute's plain language. *See Exxon,* 545 U.S. at 577, 125 S.Ct. 2611 (expressing skepticism about giving weight to committee reports when interpreting a statute).

### 2. *Permanent Injunction*

The Court holds that the SIJ statute does not require specific consent when a state court's SIJ-predicate order will not determine custody status or placement. The Court has certified a nationwide class of persons that had requests for specific consent denied, or did not have such requests adjudicated, by Defendants. In accordance with this holding, the Court finds that the class is entitled to class-wide injunctive and declaratory relief.

A permanent injunction is appropriate to remedy (1) the likelihood of substantial and immediate irreparable injury, and (2) the inadequacy of remedies at law. *G.C. & K.B. Invs., Inc. v. Wilson,* 326 F.3d 1096, 1107 (9th Cir.2003). "System-wide relief is required if the injury is the result of violations of a statute or the constitution that are attributable to policies or practices pervading the whole system...." *Armstrong v. Davis,* 275 F.3d 849, 870 (9th Cir.2001).

Here, Defendants' application of the specific consent requirement, under circumstances not provided for by the statute, deprives immigrant minors in federal custody of the SIJ protection prescribed by Congress. This deprivation has and will occur if Defendants unlawfully deny specific consent, as such denial prohibits an immigrant minor from seeking a SIJ-predicate order in state court. Or, if Defendants delay making the specific consent decision, an immigrant minor may run up against the age-out regulations. As a result of Defendants' unlawful application of the specific consent requirement, Plaintiffs have and will suffer substantial and immediate irreparable injury in losing eligibility for SIJ status and SIJ-based adjustment.

In the absence of a class-wide injunction, immigrant minors would be forced to relitigate challenges to Defendants' specific consent policy. Immigrant minors seeking SIJ protection are vulnerable, are without parental support, and are unfamiliar with the legal system; thus, they are unable to bring challenges to Defendants' policy. No adequate remedy at law is available, and declaratory and injunctive relief is necessary.

The Court, therefore, orders a permanent injunction that requires Defendants to apply the specific consent requirement according to the plain language of the statute, as interpreted here. Defendants are enjoined from requiring specific consent before an immigrant minor may seek a SIJ-predicate order in state court. Defendants may not require specific consent when a state court's SIJ-predicate order will not determine custody status or placement. The injunction places no limit on Defendants other than the limit intended by Congress; therefore, "[t]he scope of injunctive relief is dictated by the extent of the violation established." *See Lewis v. Casey,* 518 U.S. 343, 359, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

### B. *"Age–Out" Regulations*

Several "age-out" regulations are at issue in the case. 8 C.F.R. § 204.11(c)(1) precludes SIJ classification once a youth is no longer "under twenty-one years of age." 8 C.F.R. § 204.11(c)(5) requires that a youth seeking SIJ status "[c]ontinue to be dependent upon the juvenile court and eligible for long-term foster care, such declaration, dependency or eligibility not having been vacated, terminated, or otherwise ended...." Similarly for SIJ-based adjustment of status, 8 C.F.R. §§ 205.1(a)(3)(iv)(A, C, & D) revoke a youth's SIJ classification "[u]pon the beneficiary reaching the age of 21; ... the termination of the beneficiary's dependency upon the juvenile court; ... [or] the termination of the [youth's] eligibility for long-term foster care."

### 1. *Chevron Deference Standard*

After the SIJ statute's enactment in 1990, the Attorney General adopted the "age-out" regulations. 58 Fed.Reg. 42,850 (August 12, 1993) (codified at 8 C.F.R. § 204.11); 58 Fed.Reg. 42,848 (August 12, 1993) (codified at 8 C.F.R. §§ 205.11). The Attorney General was authorized to establish regulations that govern administration of the immigration system. 8 U.S.C. 1103(a) (1993). Given this general grant of regulatory authority, the Court's analysis of Defendants' "age-out" regulations proceeds under *Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778.

In *Chevron*, the Supreme Court adopted a two-step test for judicial review of administrative agency regulations that interpret federal statutes. The first step is to consider whether Congress speaks directly in the statute to the particular issue: "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778. Where a statute is ambiguous or silent with respect to the issue, a court proceeds to the second step: "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778. Agency regulations will be permissible, unless "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. 2778.

### 2. *Statutory Analysis of "Age–Out" Regulations*

Under the *Chevron* test, "Congressional intent may be determined by 'traditional tools of statutory construction,' and if a court using these tools ascertains that Congress had a clear intent on the question at issue, that intent must be given effect as law." *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1059 (9th Cir.2003).

The Court looks first to 8 U.S.C. § 1101(a)(27)(J) itself. The SIJ statute provides eligibility to a child who "has been declared dependent on a juvenile court ... has been deemed eligible by that court for long-term foster care due to abuse, neglect, or abandonment ... [and when it] has been determined ... that it would not be in the alien' best interest [to be returned to their home country]." 8 U.S.C. § 1101(a)(27)(J).

Plaintiffs stress that the statute is written in the past perfect tense. They argue this grammatical construction indicates that SIJ eligibility is not conditional on a child's age, continued dependency on a juvenile court, or continued eligibility for long-term foster care. Plaintiffs argue, therefore, that the regulations impose additional eligibility requirements unauthorized by the statute. On Plaintiffs' reading of the statute, an SIJ-predicate order establishes SIJ eligibility, and Defendants must then decide whether to grant SIJ status.

Defendants respond that the SIJ statute does not provide for "infinite eligibility." (Defs.' Opp'n 18.). Defendants argue that the statute only speaks to the criteria that establishes SIJ eligibility, not the duration of that eligibility. Defendants further emphasize that the Attorney General was delegated authority to grant SIJ status based upon an SIJ-predicate order. *See* 8 U.S.C. § 1101(a)(27)(J)(iii) (SIJ status granted only if the "Attorney General expressly consents to the dependency order serving as a precondition to the grant of special immigrant juvenile status"). On Defendants' reading, the statute permits "age-out" regulations.

The Court agrees that the text of the statute clearly provides for a child's SIJ-eligibility once a state court makes the requisite findings in an SIJ-predicate order. While Congress defined SIJ eligibility in terms of state court findings made in the past, however, *see Gwaltney of Smithfield v. Chesapeake Bay Foundation*, 484 U.S. 49, 57, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), the statute does not speak directly to the issue of "age-out" limitations on eligibility. Because the text of the statute does not address Congress's intent with respect to the age-out issue, the Court must "look to the congressional intent revealed in the history and purposes of the statutory scheme." *See United States v. Buckland*, 289 F.3d 558, 565 (9th Cir.2002) (en banc).

As already stated, the SIJ provisions were enacted to protect abused, neglected, and

abandoned immigrant youth by providing a method for adjustment to legal permanent resident status. The "age-out" regulations were enacted in 1993, a few years after passage of the SIJ statute. 58 Fed.Reg. 42,850 (August 12, 1993) (codified at 8 C.F.R. § 204.11); 58 Fed.Reg. 42,848 (August 12, 1993) (codified at 8 C.F.R. §§ 205.11). When Congress amended the SIJ statute in 1997, it did not disturb the "age-out" regulations. Furthermore, Congress chose to exclude SIJ applicants from the Child Status Protection Act of 2002, Pub.L. No. 107–208, 116 Stat. 927, which amended the INA to provide "age-out" protection for certain immigrant children that filed for permanent resident status. *See Padash v. Immigration & Naturalization Serv.*, 358 F.3d 1161, 1167 (9th Cir.2004). This history suggests that Congress condones the age-out regulations with respect to SIJ eligibility.

When Congress does not speak directly on an issue and has delegated rule-making authority to an agency, a court considers whether the agency interpretation is based on a permissible construction of the statute. *See Chevron*, 467 U.S. at 843, 104 S.Ct. 2778. Since the SIJ statute intended to protect immigrant children from abuse, neglect, and abandonment, it is reasonable that eligibility for SIJ status or SIJ-based adjustment of status would be limited to immigrant children, as opposed to adults or individuals no longer dependent on a state court. The regulations, as written, are consistent with Congress's goal of protecting abused, neglected, and abandoned immigrant children,

and therefore, the Court finds the adoption of those regulations was not arbitrary and capricious.

The Court does not find the USCIS Administrative Appeals Office opinion, A89 580 183, presented by Plaintiffs at oral argument, to change the analysis. The opinion does not question Defendants' authority to adopt the "age-out" regulations; rather, it declares that being in the continued legal custody of the state or a state agency, in addition to continued dependency, allows a person to maintain SIJ eligibility. Additionally, the Court does not consider the "age-out" regulations to have no rational basis.[14] The Court, therefore, finds the "age-out" regulations permissible under *Chevron*.

### 3. Plaintiffs' Unreasonable Delay Claim

Whether Defendants have a policy or practice of delaying SIJ adjudication so that the "age-out" regulations render immigrant youth ineligible for SIJ benefits is a separate matter. Although the Court holds that the "age-out" regulations are not invalid as a matter of law, the Court notes that Defendants cannot use the "age-out" regulations to deny SIJ benefits by unreasonably delaying adjudication. A significant delay will be less reasonable in light of the "age-out" regulations and threat of losing SIJ eligibility. However, the Court cannot decide the question of unreasonable delay as a matter of law because it raises disputed factual issues. The Court nevertheless recog-

---

**14.** Plaintiffs argue that the "age-out" regulations lack a rational basis, where aliens are protected by the Due Process Clause of the U.S. Constitution, which incorporates the guarantees of equal protection. *Garberding v. INS*, 30 F.3d 1187, (9th Cir.1994). Plaintiffs rely on *Garberding*, 30 F.3d at 1190–91, where the Ninth Circuit found no rational basis for deportation of an alien that obtained expungement of a drug offense under a broad state expungement law. The INS did not deport aliens that obtained expungement of drug offenses under narrower state expungement laws that were the counterpart to the Federal First Offender Act. *Id.* Plaintiffs argue that Defendants similarly have no rational basis for conditioning SIJ eligibility on continuing dependency on a state court, where states differ with respect to the age when a person is no longer dependent on the court. (Pls.' Mot. 17–19.)

Plaintiffs' argument is misplaced because *Garberding* is distinguishable. In *Garberding*, the petitioner had obtained expungement of a drug offense, like similarly situated persons in other states. The federal government lacked a rational basis for its action in treating petitioner differently because the state expungement law was different from the federal law. Here, the "age-out" regulations uniformly require a person's continued dependency on a state court to maintain SIJ eligibility. Defendants have a rational basis because continued dependency indicates that a youth still needs the protection afforded by the SIJ statute. Although state laws vary as to age for termination of dependency, Defendants are not engaged in differential treatment according to state law's lack of conformity to federal law, as was the case in *Garberding*.

nizes that Plaintiffs still have a claim, in light of the "age-out" regulations, that Defendants abuse their discretion by unreasonably delaying SIJ adjudications.

## C. Regulations Related to SIJ–Eligible Youth in Removal Proceedings

■ Plaintiffs [15] argue that Defendants' regulations with respect to removal proceedings unlawfully deny adjudication of minors' SIJ-based adjustment of status applications. Plaintiffs must show that 8 U.S.C. 1255 does not authorize these regulations.[16]

The Court first looks to the INA. 8 U.S.C. 1255(a) declares that "the status of an alien who was inspected and admitted or paroled into the United States ... may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence." 8 U.S.C. 1255(h) provides that special immigrant juveniles "shall be deemed ... to have been paroled into the United States." *See also* 8 C.F.R. 245.1(a). Under the INA, SIJs are clearly eligible for adjustment of status. 8 U.S.C. §§ 1101(a)(27)(J) and 1255(a & h). The Attorney General clearly has been delegated authority to make regulations with respect to adjustment of status. 8 U.S.C. 1255(a).

According to the regulations relevant here, USCIS is responsible for adjudication of an SIJ-based adjustment of status applications unless a SIJ is in removal proceedings. *See* 8 C.F.R. § 245.2(a)(1) ("USCIS has jurisdiction to adjudicate an application for adjustment of status filed by any alien, unless the immigration judge has jurisdiction to adjudicate any application under 8 C.F.R. § 1245.2(a)(1).") Once removal proceedings are commenced, the immigration judge is vested with exclusive jurisdiction to adjudicate SIJ-based adjustment applications. *See* 8 C.F.R. § 1245.2(a)(1) ("In the case of any alien who has been placed in deportation

proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file.")

Plaintiffs argue that the regulations are inconsistent with the INA because the statute specifically provides for SIJ-based adjustment of status, yet the regulations preclude adjudication of adjustment applications. Pointing to the Ninth Circuit's decision in *Bona v. Gonzales*, 425 F.3d 663 (9th Cir. 2005), Plaintiffs argue *Bona* stands for the proposition that Defendants' regulations "may not deny a statutorily eligible alien adjudication of their application for adjustment of status." (Pls.' Mot. 24.). While this is a proper reading of the *Bona* holding, the regulations at issue here do not categorically deny eligible aliens from adjudication of adjustment applications, which was the basis for invalidity in *Bona*.

In *Bona*, the Ninth Circuit considered the validity of a regulation that did not allow paroled aliens to seek adjustment of status in a removal proceeding, despite the INA's provision that paroled aliens were eligible to apply for adjustment of status. *Bona*, 425 F.3d at 665. The Ninth Circuit held that the regulation was invalid because it "redefines certain aliens as ineligible to apply for adjustment of status, ... whom a statute, 8 U.S.C. 1255(a), defines as eligible to apply." *Id.* at 668, *quoting Succar v. Ashcroft* 394 F.3d 8 (1st Cir.2005) (internal quotations omitted). The regulation "entirely exclud[ed] a category of aliens from the ability to apply for adjustment, who by statute are eligible to apply for such relief." *Id.* at 670.

*Bona* is inapplicable here because the regulations at issue do not categorically deny SIJs the opportunity to apply for adjustment of status. Unlike the paroled aliens in *Bona*, SIJs in removal proceedings are eligible for adjudication of their adjustment of status

---

**15.** As the Court denied class certification for a subclass of persons undergoing removal proceedings, the Court treats Plaintiffs' challenge to Defendants' removal regulations under joinder principles. The Court notes that Plaintiff Freddy Garrido–Martinez is the only individual plaintiff in this action that was subject to the removal regulations.

**16.** Although neither party addresses their arguments to the *Chevron* standard articulated above, *see Chevron USA, Inc.*, 467 U.S. at 842, 104 S.Ct. 2778, Plaintiffs' challenge raises the issue whether the regulations are permissible under *Chevron*.

applications by the immigration judge, who has exclusive jurisdiction over adjustment applications for persons in removal proceedings. 8 C.F.R. §§ 245.2(a)(1) & 1245.2(a)(1). Plaintiffs does not otherwise challenge these regulations under *Chevron.* Accordingly, the Court finds that the regulations are not clearly contrary to the INA, or that the regulations are an arbitrary or capricious exercise of Defendants' authority to prescribe regulations with respect to adjustment of status.

 Plaintiffs alternatively challenge the ninety day time limit on motions to reopen removal proceedings. Where the Board of Immigration Appeals or an immigration judge issues a removal order, a SIJ must make a motion to reopen removal proceedings within 90 days of the final order of removal. 8 U.S.C. 1229a(c)(c)(7)(C)(j); *see also* 8 C.F.R. §§ 1003.2(c)(2); 1003.23(b)(I). Plaintiffs argue that SIJs are deprived of adjudication of their SIJ-based adjustment applications by the time limitation on filing motions to reopen removal proceedings.

Plaintiffs cannot show that the ninety day time limit in 8 C.F.R. §§ 1003.2(c)(2) and 1003.23(b)(I) is invalid, as the INA specifically provides for the ninety day limit. The regulations track that language. *See* 8 U.S.C. 1229a(c)(7)(C)(i) ("Except as provided for in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal.").[17]

## IV. CONCLUSION

### A. *Motion for Class Certification*

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiffs' motion for class certification:

1. The Court GRANTS certification of the specific consent subclass.

2. The Court GRANTS certification of the age-out sub-class.

3. The Court DENIES certification of the removal sub-class.

### B. *Plaintiffs' Motion for Partial Summary Adjudication and Defendants' Cross–Motion for Summary Judgment*

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiffs' motion for partial summary adjudication, and Defendants' cross-motion for summary judgment:

1. The Court GRANTS summary adjudication to Plaintiffs on their claim regarding the specific consent requirement. Defendants' motion is DENIED on this claim. As explained in this Order, Defendants are enjoined from requiring specific consent when a minor only seeks state court jurisdiction for an SIJ-predicate order.

2. The Court DENIES summary adjudication to Plaintiffs on their claim that Defendants' age-out regulations imposed *ultra vires* eligibility requirements. As explained in this Order, Defendants' motion for summary adjudication on this claim is GRANTED. Plaintiffs' age-out subclass may still raise the claim that Defendants unreasonably delay adjudication of the SIJ applications of immigrant minors subject to the age-out regulations.

3. The Court DENIES summary adjudication to Plaintiffs on their claim regarding Defendants' removal regulations. Defendants are GRANTED summary adjudication on this claim. Plaintiffs may still raise a claim of abuse of discretion in application of the removal regulations.

IT IS SO ORDERED.

---

17. Plaintiffs suggest that Defendants typically refuse to join SIJs motions to reopen. *See* 8 C.F.R. § 1003.23(b)(4)(iv). Plaintiffs also have argued that the BIA typically refuses to exercise their power reopen removal proceedings *sua sponte.*

*See* 8 C.F.R. §§ 1003.2(a). The parties' have not fully briefed any issues with respect to these allegations; the Court, therefore, will not consider such issues in connection with this set of motions.