***In Re: O. RG.***, No. 0404, September Term 2025. Opinion by Reed, M.

**JUVENILE LAW > COLLATERAL ORDER DOCTRINE**

An interlocutory order from a juvenile court declining to make SIJS factual findings is immediately appealable under the collateral order doctrine if it meets all of the following four requirements: "(1) [it] conclusively determines the disputed question; (2) [it] resolves an important issue, (3) [it] resolves an issue that is completely separate from the merits of the action, and (4) [it] would be effectively unreviewable if the appeal had to await the entry of a final judgment." *In re O.P.*, 470 Md. 225, 251 (2020) (quoting *Pittsburgh Corning Corp. v. James*, 353 Md. 657, 661 (1999)).

**JUVENILE LAW > CHILDREN IN NEED OF ASSISTANCE > SPECIAL IMMIGRANT JUVENILE STATUS > JURISDICTION**

A juvenile court has jurisdiction to make SIJS factual findings when it has established jurisdiction over a juvenile's CINA case. *See* Md. Code Ann. Cts. & Jud. Proc. §§ 3-804; 3-804; 3-819.

**JUVENILE LAW > CHILDREN IN NEED OF ASSISTANCE > SPECIAL IMMIGRANT JUVENILE STATUS > PLEADING REQUIREMENTS**

In an on-going CINA case, a juvenile's request for SIJS factual findings does not need to be filed in a separate cause of action, and the juvenile is simply required to put the juvenile court "on notice" of their request for SIJS factual findings. *See Simbaina v. Bunay*, 221 Md. App. 440, 457-58 (2015).

**JUVENILE LAW > CHILDREN IN NEED OF ASSISTANCE > SPECIAL IMMIGRANT JUVENILE STATUS**

A juvenile court is required to hear testimony and receive evidence to make independent factual findings regarding a juvenile's eligibility for SIJ status when requested to do so in a juvenile's pleadings and a juvenile adequately "put [the juvenile court] on notice" of this request. *See Romero v. Perez*, 463 Md. 182, 190-91 (2019); *Simbaina*, 221 Md. App. at 457-59.

**JUVENILE LAW > CHILDREN IN NEED OF ASSISTANCE > SPECIAL IMMIGRANT JUVENILE STATUS > SERVICE OF PROCESS**

A juvenile court cannot decline to make SIJS factual findings based on ineffective service of process when a juvenile's parents are parties to the juvenile's CINA case and copies of all pleadings and filings were mailed to the parents' last known addresses in compliance with Md. Rule 1-321(a). *See* Md. Code Ann. Cts. & Jud. Proc. § 3-801(v)(1).

**JUVENILE LAW > LAW-OF-THE-CASE DOCTRINE**

A juvenile court's order denying a request to make SIJS factual findings cannot serve as the law-of-the-case, under the law-of-the-case doctrine, for another juvenile court to deny such a request. *See Scott v. State*, 379 Md. 113, 184 (2017); *Elec. Gen. Corp. v. Labonte*, 454 Md. 113, 140 (2017).

Circuit Court for Anne Arundel County
Case No. C-02-JV-23-000121

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 0404

September Term, 2025

_____

*In Re: O. RG.*

_____

Reed,
Zic,
Hotten, Michele D.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Reed, J.
_____

Filed: October 31, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The present interlocutory appeal arises from the Circuit Court for Anne Arundel County's, sitting as a juvenile court, denial of Appellant's Emergency Motion for Special Findings of Fact and Law, on March 24, 2025. Appellant, O. RG.,[1] is an undocumented child who is represented by the Legal Aid Bureau. Currently, the Department of Social Services ("The Department") has custody of Appellant. Appellee's brief was filed by the Attorney General of Maryland's Office.[2] This motion renewed Appellant's request that the juvenile court make factual findings regarding Appellant's Special Immigrant Juvenile Status ("SIJS").[3] The juvenile court declined to make these factual findings on the grounds that the Order docketed on October 29, 2024 "serves as the law of this case." The juvenile court's Order on October 29, 2024, denied Appellant's motions for SIJS factual findings on the grounds that Appellant failed to properly serve Appellant's parents and that the request for SIJS factual findings must be filed in a separate action.

---

[1] Appellant is referred to by his initials because he is a minor.

[2] In Appellee's Brief, filed by the Attorney General of Maryland's Office, Appellee states, "Although the Department did not take a position on O.'s motion below and did not appeal, it is filing this brief to urge that the motion be addressed on its merits."

[3] Under the Immigration and Nationality Act, Special Immigrant Juvenile ("SIJ") means "an immigrant who is present in the United States […] who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law[.]" 8 U.S.C. § 1101(a)(27)(J)(ii).

In bringing this appeal, Appellant presents two questions for our review, which we rephrase as follows:[4]

I.    Does this Court have jurisdiction to review the juvenile court's denial of Appellant's motion for SIJS findings under the collateral order doctrine?

II.   Did the juvenile court have jurisdiction to make SIJS factual findings for Appellant, and did the court err in failing to do so?

For the following reasons, we reverse the Circuit Court for Anne Arundel County's March 24, 2025 Order denying Appellant's Emergency Motion for Special Findings of Fact and Law, and remand to the Circuit Court for Anne Arundel County to make Special Immigrant Juvenile factual findings.[5]

## FACTUAL & PROCEDURAL BACKGROUND

Appellant, O. RG., was born in Guatemala in August 2006, and he is currently nineteen years old. Appellant's father, who would hit Appellant and Appellant's mother in front of Appellant, left the family when Appellant was about six years old. Appellant has

---

[4] In his brief, Appellant frames the questions, verbatim, as:
   I.    Is the juvenile court's March 24, 2025, order refusing to make SIJ findings appealable under the collateral order doctrine when a final judgment in O.'s CINA case is unlikely to be entered until he reaches 21 years of age and is no longer eligible for SIJ protection?
   II.   Did the Juvenile Court err as a matter of law when it refused to make SIJ factual findings for O. on the ground that it is authorized to make those findings only if he files and serves a complaint in a separate action?

[5] In addition to Appellant's Emergency Motion, Appellant also filed an Emergency Motion to Vacate Orders Denying Special Findings of Fact and Law and Renewal of Request for SIJS Findings, requesting the court to vacate the October 29, 2024 Order and renewing his request for SIJS findings. On April 28, 2025, the juvenile court denied this motion.

not seen, communicated with, or received any money from his father since he left the family. Appellant attended school until he was about thirteen years old, when he started working on a farm to help support this family instead of going to school. Appellant's mother often punished him by hitting him with belts, switches, or rocks, sometimes leaving scars on his body. In 2021, Appellant's mother began a relationship with and ultimately married a man who often insulted and repeatedly threatened to kill Appellant. Appellant "did not feel supported by [his] mother and was afraid of [her husband.]"

In August 2021, Appellant left Guatemala and entered the United States as an unaccompanied minor. In September 2021, Appellant moved to Maryland to live with two adults, who are not related to him. These individuals forced Appellant to work long hours without pay or food and did not allow him to attend school.

Appellant later began attending a local public high school, where he is currently in 11th grade. On April 26, 2023, Appellant got in an altercation at school, during which he reportedly made statements of self-harm. He was taken to a hospital for a psychiatric evaluation. When the hospital prepared to release Appellant the next day, he did not have an adult to whom the hospital could release him. It was reported that there was domestic violence in the home Appellant had been residing at and that it would not be safe for him to return there. The Department attempted to contact Appellant's parents in Guatemala but was unsuccessful because the phone number Appellant had for his mother did not work and Appellant had no means of contacting his father. There were no other family members willing or able to care for Appellant.

On April 27, 2023, the Department filed a child in need of assistance ("CINA")[6] petition and requested Appellant be placed in shelter care following his hospitalization and a report that he was believed to have been a victim of labor trafficking. On April 28, 2023, the Circuit Court for Anne Arundel County, sitting as a juvenile court, authorized the Department's shelter care request. On May 22, 2023, the juvenile court sustained the allegations in the Department's CINA petition, finding Appellant to be a CINA, and committed him to the Department's custody for foster care placement. On October 10, 2023, the juvenile court continued Appellant's commitment to the Department's custody and determined that his permanency plan should be Another Planned Permanency Living Arrangement ("APPLA")[7] because he could not be reunified with his parents, and he has no other relatives in the United States who can serve as resources.

On March 28, 2024, Appellant filed a motion for Entry of Order Regarding Factual Findings for Special Immigrant Juvenile under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(27)(J). On May 30, 2024, Appellant filed an Amended Motion for Entry of Order Regarding Factual Findings for SIJS, seeking the same relief. Additionally,

---

[6] A child in need of assistance ("CINA") is "a child who requires court intervention because: (1) The child has been abused, has been neglected, has a developmental disability, or has a mental disorder; and (2) The child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs." Md. Code Ann., Cts. & Jud. Proc. § 3-801(f),(g).

[7] A juvenile court determines the appropriate permanency plan for a child, which can include reunification with a parent, placement with a relative, adoption, and much more. Cts. & Jud. Proc. § 3-823. An "APPLA" is one permanency plan option that "[a]ddresses the individualized needs of the child, including the child's educational plan, emotional stability, physical placement, and socialization needs[.]" Cts. & Jud. Proc. § 3-823I(1)(i)(5).

Appellant filed a Motion for Alternative Service for his parents, arguing that "there is no available way to serve [Appellant's mother]" and Appellant's father's "whereabouts are unknown."

On June 4, 2024, the juvenile court denied both the Amended Motion for Factual Findings and the Motion for Alternative Service on the grounds that Appellant failed to effectuate proper service on his parents. Specifically, the juvenile court denied the Motion for Alternative Service because "respondent has not attempt[ed] to serve the parents." Additionally, the juvenile court ordered that Appellant supplement the Amended Motion within thirty days to show cause as to why the Motion for SIJS findings "is proper in the present juvenile matter rather than a separate family law matter," otherwise the Motion may be dismissed.

On July 3, 2024, Appellant filed a supplement to his Amended Motion answering the show cause order, explaining why the juvenile court is a proper forum to make SIJS findings. Appellant also filed a Motion for Acknowledgement of Satisfaction of Service Requirements, which provided that Appellant made reasonable efforts in accordance with Maryland Rule 11-107(b) and Rule 1-321 to serve his parents. Specifically, Appellant provided that "Counsel mailed a copy of the motion regarding SIJS and supporting documents to [Appellant's mother] at her last known address[,]" and Appellant attempted to serve his mother via a WhatsApp phone number.

Following a motions hearing, on October 29, 2024, the juvenile court denied both of Appellant's motions because of Appellant's "[f]ailure to properly serve the biological parent(s) with the Writ of Summons and Complaint" and his "[f]ailure to include both

5

biological parents as parties to the Special Immigrant Juvenile case[.]" Additionally, the juvenile court concluded that "there is no authority to file this matter in a Juvenile CINA case" and that the request for SIJS "must be filed in a separate Family Law case."

On March 5, 2025, Kids in Need of Defense ("KIND") filed an Emergency Motion for Special Findings of Fact and Law, reiterating Appellant's request for SIJS findings and requesting "expeditious adjudication of this motion, as KIND faces uncertainty regarding government funding[,]" due to the government issued "stop-work order to federally funded providers of legal services for migrant children." On March 14, 2025, the juvenile court completed a SIJS Checklist, stating that Appellant's pleadings were incomplete because he "failed to properly serve [his] biological parent(s) with a Writ of Summons and Complaint[.]" On March 24, 2025, the juvenile court denied Appellant's Emergency Motion on the grounds that the Order docketed on October 29, 2024 "serves as the law of this case." On April 23, 2025, Appellant timely appealed this order.[8]

## STANDARD OF REVIEW

Maryland appellate court review of juvenile courts' custody decisions involves "three different but interrelated standards of review[.]" *See In re Adoption/Guardianship of Cadence B.*, 417 Md. 146, 155 (2010). First, this Court applies a clearly erroneous standard of review when scrutinizing factual findings; second, this Court applies a harmless error standard of review for matters of law; and third, this Court applies an abuse of

---

[8] As noted above in footnote 3, Appellant also filed an Emergency Motion to Vacate Orders Denying Special Findings of Fact and Law and Renewal of Request for SIJS Findings, requesting the court to vacate the October 29, 2024 Order and renewing his request for SIJS findings. On April 28, 2025, the juvenile court denied this motion.

discretion standard of review for a juvenile court's ultimate decision. *Id.* at 155 (citing *In re Yve S.*, 373 Md. 551, 586 (2003)).

However, while a trial court "is granted broad discretion in granting or denying equitable relief, where an order involves an interpretation and application of Maryland constitutional, statutory or case law, [this] Court must determine whether the trial court's conclusions are 'legally correct' under a *de novo* standard of review." *Simbaina v. Bunay*, 221 Md. App. 440, 448 (2015) (quoting *Schisler v. State*, 394 Md. 519, 535 (2006)). Therefore, this Court must determine if the juvenile court's denial of the request for SIJS factual findings in this CINA case was "legally correct" under a *de novo* standard because SIJS factual findings involve the interpretation of State law and federal statutes and regulations. *See Simbaina*, 221 Md. App. at 448 (citing *Nesbit v. Government Employees Ins. Co.*, 382 Md. 65, 72 (2004)).

## DISCUSSION

### *This Court has Jurisdiction to Review this Matter Under the Collateral Order Doctrine*

#### A. Parties' Contentions

Appellant and Appellee agree that this Court has jurisdiction to review the denial of Appellant's motion for SIJS findings under the collateral order doctrine. Specifically, Appellant provides that a court order is "immediately appealable under the collateral order doctrine if it '(1) conclusively determines the disputed question, (2) resolves an important issue, (3) resolves an issue that is completely separate from the merits of the action, and (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment.'" *In re M.P.*, 487 Md. 53, 68 (2024) (quoting *Stephens v. State*, 420 Md. 495,

7

502 (2011)). In turn, Appellant argues each of these four requirements are met in the current matter. Appellee provides in a footnote that it agrees with the arguments Appellant makes regarding the collateral order doctrine.

## B. Analysis

Typically, a party only has the right to appeal a final judgment. *See In re M.P.*, 487 Md. at 68 (citing Md. Code Ann., Cts. & Jud. Pro. § 12-301). However, in some circumstances, interlocutory orders are appealable under the collateral order doctrine.[9] *In re M.P.*, 487 Md. at 68 (citing *In re O.P.*, 470 Md. 225, 250 (2020); *Salvagno v. Frew*, 388 Md. 605, 615 (2005)). An interlocutory order is immediately appealable under the collateral order doctrine if it: "(1) conclusively determines the disputed question, (2) resolves an important issue, (3) resolves an issue that is completely separate from the merits of the action, and (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment." *In re O.P.*, 470 Md. at 251 (quoting *Pittsburgh Corning Corp. v. James*, 353 Md. 657, 661 (1999)). All four of these elements must be met, and each element is strictly construed. *In re M.P.*, 487 Md. at 68 (citing *Stephens*, 420 Md. at 502-03).

The first prong of the collateral order doctrine, that the order "conclusively determines the disputed question," is satisfied when the order leaves the aggrieved party with no further recourse on the issue before the trial court. *See e.g. In re M.P.*, 487 Md. at 73 (concluding that the denial of the motion to dismiss fully resolved the jurisdictional

---

[9] The collateral order doctrine originates from *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). *See Kurstin v. Bromberg Rosenthal, LLP*, 191 Md. App. 124 (2010) (outlining the development of the collateral order doctrine and its introduction to Maryland law).

question at issue in the case); *In re O.P.*, 470 Md. at 251 (stating that the issue in the case, whether continued temporary placement of a child outside the home was warranted while awaiting adjudication of a CINA petition, was "conclusively determined by a juvenile court order[.]").

Here, the juvenile court's Order on March 24, 2025, denying Appellant's request for SIJS factual findings, not only conclusively decided whether the juvenile court was required or willing to make SIJS factual findings for Appellant, but also determined that Appellant would be completely ineligible for SIJ status. A child cannot apply to the United States Citizenship and Immigration Services for SIJ status without first obtaining an order from a juvenile court. *See* "Special Immigrant Juvenile Status: Information for Juvenile Courts," U.S. Citizen and Immigration Services ("USCIS") available at https://perma.cc/DX25-ESYQ (last visited Sept. 16, 2025). Therefore, the juvenile court's March 24, 2025 Order left Appellant with no further recourse before the juvenile court to seek SIJS factual findings and thus no ability to seek SIJ status.

The juvenile court's denial of Appellant's motion for SIJS factual findings satisfies the second prong of the collateral order doctrine, that it resolves an important issue, because the denial concerns the "safety and welfare of [a] child." *In re O.P.*, 470 Md. at 251 (stating that a CINA petition "undeniably resolves an important issue" because it "hinges on whether there is an emergency situation that requires temporary placement outside the home for the safety and welfare of the child."). The federal government created SIJ status to protect children who have been subjected to abuse, abandonment, or neglect and are present in the United States without legal immigration status. *See* "Special Immigrant

9

Juvenile Status: Information for Juvenile Courts," USCIS available at https://perma.cc/DX25-ESYQ (last visited Sept. 16, 2025). Appellant left Guatemala and came to the United States to escape abuse, neglect, and death threats from his stepfather, the type of harm SIJ status was designed to address. However, as outlined above, the juvenile court's denial of Appellant's Motion to make SIJS factual findings precludes him from being eligible for SIJ status. *See* "Special Immigrant Juvenile Status: Information for Juvenile Courts," USCIS available at https://perma.cc/DX25-ESYQ (last visited Sept. 16, 2025)). It is necessary that the juvenile court make SIJS factual findings for Appellant to be able to seek legal immigration status, which is vital for his safety and protection. *See id; In re O.P.*, 470 Md. at 251.

The third requirement of the collateral order doctrine, that the order "resolves an issue that is completely separate from the merits of the action," is met in the instant case because the order is a "separable branch of the case," and not "a step toward the final disposition" of the principal claim. *See In re O.P.*, 470 Md. at 251 (citing *In re O.P.*, 240 Md. App. 518, 554-56, *aff'd in part rev'd in part*, 470 Md. 225 (2020)) (quoting *Sigma Reproductive Health Center v. State*, 297 Md. 660, 666 (1983)). In *In re O.P.*, the Supreme Court of Maryland concluded that a request for continuation of shelter care was neither a necessary step in a CINA proceeding nor a part of a CINA determination. Similarly, while Appellant's CINA case and request for SIJS factual findings appear in the same matter, whether the juvenile court makes SIJS factual findings for Appellant has no effect on Appellant's CINA case. Thus, the Order resolves an issue that is completely separate from

the merits of the CINA action. This proposition is asserted by both parties in the case and was reasserted at the oral argument.

Finally, the fourth prong of the collateral order doctrine is satisfied here because an appeal of whether the juvenile court needs to make SIJS factual findings in Appellant's CINA case "would be effectively unreviewable if the appeal had to await the entry of a final judgment." *In re O.P.*, 470 Md. at 251 (quoting *Pittsburgh Corning Corp.*, 353 Md. at 661). In *In re O.P.*, this Court concluded that a shelter care order would be "effectively unreviewable if an appeal had to await a final judgment in [a] CINA case." *In re O.P.*, 470 Md. at 251; *See also In re Franke*, 207 Md. App. 679, 688-89 (2012) (concluding that an appeal of the denial of counsel's motion to strike an appearance would be moot and thus unreviewable by the entry of a final judgment).

A CINA case ends once a child turns twenty-one years old, unless the court terminates the case sooner. Md. Code Ann., Cts. & Jud. Proc. § 3-804. Appellant is nineteen years old, has been committed to the Department's custody, and placed in an independent living program. The juvenile court concluded that there are no concerns with Appellant's placement, that his placement is the least restrictive option for him, and he is reportedly doing well there. Given Appellant's age and the appropriateness of his placement, and lack of other options, it is unlikely that Appellant's CINA case will close until he turns twenty-one. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-804. Therefore, if an appeal of the juvenile court's denial to make SIJS factual findings for Appellant had to wait until Appellant's CINA case closed, the appeal would be unreviewable due to mootness because Appellant would no longer be eligible for SIJ status at twenty-one years old. *See* 8 C.F.R. § 204.11(c)

11

(providing that a petitioner must be under twenty-one years of age at the time of filing a petition for SIJ status to be eligible).

All four of the requirements of the collateral order doctrine are satisfied in the instant case and this interlocutory appeal is reviewable by this Court under the collateral order doctrine.

### *The Juvenile Court's Jurisdiction and Requirement to Make Special Immigrant Juvenile Factual Findings*

#### A. Parties' Contentions

Appellant asserts that the juvenile court erred in determining that it lacked jurisdiction to make SIJS factual findings in Appellant's CINA case. Appellant argues that the juvenile court has "exclusive, original jurisdiction" over such matters, and that it was required to make SIJS factual findings. Additionally, Appellant asserts that the juvenile court erred in concluding that Appellant must file and serve a separate complaint to obtain SIJS findings.

Similarly, Appellee agrees that the federal government has delegated the authority to make SIJS factual findings to state juvenile courts. Appellee argues that Appellant is correct that "he was not required to file a separate action seeking SIJ findings[,]" and that the juvenile court was required to make SIJS factual findings. Thus, Appellee requests that this matter be reversed and remanded for Appellant's request to be evaluated on the merits.

#### B. Analysis

The United States Congress created Special Immigrant Juvenile status to provide undocumented children, who lack legal immigration status and have been "abused,

12

abandoned, or neglected[,]" with a defense against deportation proceedings. *In re Dany G.*, 223 Md. App. 707, 712 (2015) (quoting "Special Immigrant Juvenile Status for Juvenile Courts," USCIS, available at https://perma.cc/DX25-ESYQ (last visited Sept. 16, 2025)). When obtained, this immigration classification protects undocumented immigrant children in the United States from being returned to an abusive or neglectful parent in their home country. *See Romero v. Perez*, 463 Md. 182, 185 (2019) (citing 8 U.S.C. § 1101(a)(27)(J)).

Federal law defines a Special Immigrant Juvenile as an immigrant "who has been declared dependent on a juvenile court […] or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court[,]" and whose reunification with one or both of their parents is "not viable due to abuse, neglect, abandonment, or a similar basis" under State law. 8 U.S.C. § 1101(a)(27)(J). To be eligible for SIJ status, a petitioner must: (1) be under 21 years of age at the time of filing the petition; (2) be unmarried at the time of filing and adjudication; (3) be physically present in the U.S.; (4) be the subject of a juvenile court order that meets the requirements in 8 C.F.R. § 204.11(c); and (5) obtain consent from the Secretary of Homeland Security to classification as a SIJ. 8 C.F.R. § 204.11(c).

As for the fourth requirement, a "juvenile court" is a court located in the U.S. that "has jurisdiction under State law to make judicial determinations about the dependency and/or custody and care of juveniles." 8 C.F.R. § 204.11(a). Once the juvenile court obtains jurisdiction over a child, "the jurisdiction continues in that case until the child reaches the age of [twenty-one] years[.]" Md. Code Ann., Cts. & Jud. Pro. § 3-804. While an equity

13

court could have jurisdiction over "custody or guardianship of an immigrant child pursuant to a motion for [SIJS] factual findings[,]" Md. Code Ann., Fam. Law § 1-201(b)(10), this "does not take away or impair the jurisdiction of a juvenile court[.]" Md. Code Ann., Fam. Law § 1-201(d).

Before a child can receive SIJ status, a child must first obtain a qualifying "SIJ-predicate order" from a state juvenile court. *Simbaina*, 221 Md. App. at 449-50 (quoting *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 253 (2008)). There are no "specific pleading requirements" for requesting SIJS factual findings because SIJS factual findings are "not a separate cause of action." *Id.* at 457. Thus, a separate action requesting SIJS factual findings is not required. *Id.* at 458. However, a party must put the court "on notice of the request for these factual findings." *Id.* (concluding that factual findings were "part of the requested relief" because repeated requests made it clear that the SIJ issue was "sufficiently before the court").

The Supreme Court of Maryland has provided that "when a party requests SIJ status findings in his or her pleadings, the circuit court *must* undertake the fact-finding process (hear testimony and receive evidence) and issue 'independent factual findings regarding' the minor's eligibility for SIJ status." *Romero*, 463 Md. at 190-91 (quoting *Simbaina*, 221 Md. App. at 458-59). The federal statute provides no restrictions on what an appropriate proceeding is or how these SIJS factual findings should be made. *Simbaina*, 221 Md. App. at 455. The only limitation is that the court entering the findings must meet the federal definition of a "juvenile court." *Id.* A qualifying SIJ-predicate order's factual findings include:

[C]ertain judicial determinations related to the petitioner's custody or dependency and determined that the petitioner cannot reunify with their parent(s) due to abuse, neglect, abandonment, or a similar basis under State law. […] [Additionally, the juvenile court must have] [d]eclared the petitioner dependent upon the juvenile court; or [l]egally committed to or placed the petitioner under the custody of an agency or department of a State, or an individual or entity appointed by a State of juvenile court. […] [And a] determination must be made in judicial or administrative proceedings by a court […] that it would not be in the petitioner's best interest to be returned to the petitioner's or their parent's country of nationality or last habitual residence.

8 C.F.R. § 204.11(c). In other words, "'trial judges are to determine whether the child would be considered abused, neglected, or abandoned under Maryland law without regard to where the child lived' when the mistreatment occurred." *Romero*, 463 Md. at 205 (quoting *In re Dany G.*, 223 Md. App. at 718). Once a juvenile court has made these initial SIJS factual findings, the child is eligible to petition the United States Citizenship and Immigration Services for SIJ status. 8 C.F.R. § 204.11(b).

This Court has recognized that it is unusual that this federal statute, 8 U.S.C. § 1101(a)(27)(J), "directs the circuit court to enter factual findings that are advisory to a federal agency determination[.]" *Simbaina*, 221 Md. App. at 451. However, this Court does "not believe that the statute offends State separation of powers." *Id.* Rather, this Court has concluded that State juvenile courts are "the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests." *Id.* at 451-52 (citing *Leslie H. v. Superior Court*, 224 Cal. App. 4th 340, 347-48 (2014)).

As provided above, both *Simbaina*, 221 Md. App. 440,[10] and *Romero*, 463 Md. 182,[11] provide applicable precedent for the issue at hand. However, these cases vary from the instant situation in a few distinct ways. In both *Simbaina* and *Romero*, the petitioners requested the respective juvenile courts to make SIJS factual findings as a part of custody proceedings, rather than a CINA proceeding as in the instant case. *Simbaina*, 221 Md. App. at 445-47; *Romero*, 436 Md. at 186. Additionally, no service of process issues arose in either *Simbaina* or *Romero* because one or both parents of the children in question were present in the United States and appeared before the court in both cases. *Simbaina*, 221 Md. App. at 446-48; *Romero*, 436 Md. at 185-87, 193-95.

---

[10] In *Simbaina*, 221 Md. App. 440, the parties were involved in a divorce and custody dispute involving their shared child. *Id.* at 445-47. As a part of this dispute, the child's mother requested that the court make SIJS factual findings for the child, which the circuit court declined to do, stating that "there is a pleading that needs to be filed concerning any immigration issues[,]" and suggesting this pleading is a "petition for some type of guardianship." *Id.* On appeal, this Court concluded that the circuit court was incorrect in stating that SIJS findings required a separate pleading, and that the circuit court in the custody proceeding should have heard testimony and evidence to enter factual findings relating to SIJS status without requiring a separate filing. *Id.* at 453, 456, 458. Accordingly, this case was remanded for such findings to be made. *Id.* at 459.

[11] In *Romero*, 463 Md. 182, a father petitioned for custody of his child and for SIJS factual findings to be made for the child, who was a noncitizen from Guatemala. *Id.* at 186. The father provided that SIJ status was necessary because the child had been mistreated by his mother in Guatemala. *Id.* at 194. The father was granted custody of his son, but the court declined to make SIJS factual findings. *Id.* at 195. The Court of Special Appeals, which has since been renamed the Appellate Court of Maryland, affirmed the trial court's decision, and the Court of Appeals, which has since been renamed the Supreme Court of Maryland, granted Petitioner's writ of certiorari. *Id.* at 195-96. The Court of Appeals concluded that the preponderance of the evidence standard is the appropriate burden of proof in SIJ status cases and provided factors that the circuit courts should consider when making SIJS factual findings. *Id.* at 197-204. Accordingly, the Court of Appeals vacated both the lower court decisions and "required the circuit court to issue an amended order with the requisite SIJ status findings." *Id.* at 207.

Additionally, this Court has addressed juvenile courts' obligation to make SIJS findings in custody and guardianship matters, relying on *Simbaina* and *Romero* in unreported cases. *See e.g Montecino v. Ramos*, No. 606, 2023 WL 6969232 (Md. App. Oct. 23, 2023) (denying Appellant's request for custody and deeming Appellant's request for SIJS factual findings to be moot); *In the Matter of Lopez*, No. 1559, 2025 WL 1024039 (Md. App. Apr. 7, 2025) (vacating and remanding the juvenile court's grant of Appellant's request for guardianship and denial to make SIJS factual findings).[12] However, this Court has not explicitly addressed the instant situation, in which the request for SIJS findings is made within a CINA case.

Here, Appellant is nineteen years old, unmarried, and physically present in the U.S., meeting the first three requirements for obtaining SIJ status under 8 C.F.R. § 204.11(c). In this case, the Circuit Court for Anne Arundel County, sitting as a juvenile court for Appellant's CINA case, fell within the definition of a "juvenile court" under 8 C.F.R. § 204.11(a) because Maryland law provides that this court has jurisdiction to make "judicial determinations about the dependency and/or custody and care of juveniles." 8 C.F.R. § 204.11(a); Md. Code Ann., Cts. & Jud. Proc. §§ 3-803(a)(2), (b)(1)(i) (providing that Maryland juvenile courts have jurisdiction over "[p]roceedings arising from a petition alleging that a child is a CINA[,]" and over "[c]ustody, visitation, support, and paternity of a child whom the court finds to be a CINA[.]").

---

[12] Importantly, these unreported cases from this Court are not binding on this decision. Rather, they merely illustrate that this Court has followed *Simbaina*, 221 Md. App. 440 and *Romero*, 436 Md. 182 on numerous occasions.

Furthermore, the juvenile court erred in its conclusion that "there is no authority to file this matter in a Juvenile CINA case." The juvenile court established its jurisdiction over Appellant's CINA case when it placed Appellant in the custody of the Department under Md. Code Ann. Cts. & Jud. Proc. § 3-819. Appellant "continues to be a [CINA,]" and may be until he reaches twenty-one years of age. Therefore, the juvenile court's jurisdiction over Appellant may continue until he reaches twenty-one years of age. Md. Code Ann. Cts. & Jud. Proc. § 3-804. Furthermore, the juvenile court will maintain jurisdiction over Appellant's request for SIJS factual findings because these requests arose from Appellant's CINA petition. Md. Code Ann., Cts. & Jud. Pro. § 3-803 (providing that the court has "exclusive original jurisdiction" over "[p]roceedings arising from a petition alleging that a child is a CINA[.]"

The juvenile court erred in concluding that Appellant's request must be filed in a separate Family Law case. Appellant was not required to file a separate cause of action to request SIJS factual findings, and adequately put the juvenile court "on notice" by making numerous requests that the juvenile court make factual findings for SIJ status.[13] *See*

---

[13] Appellant requested the juvenile court make SIJS factual findings on seven different occasions. On March 28, 2024, Appellant filed a Motion for Entry of Order Regarding Factual Findings for Special Immigrant Juvenile Status. On May 30, 2024, Appellant filed an Amended Motion for Entry of Order Regarding Factual Findings for Special Immigrant Juvenile Status. On July 3, 2024, Appellant filed a Supplement to Amended Motion for Entry of Order Regarding Factual Findings for Special Immigrant Juvenile Status. On July 11, 2024, Appellant filed a Motion to Acknowledge Satisfaction of Service Requirements and Set for Hearing Regarding Legal and Factual Findings for Special Immigrant Juvenile Status. On March 5, 2025, Appellant filed an Emergency Motion for Special Findings of Fact and Law. On March 20, 2025, Appellant filed a Response to Notice of Deficiency and Renewal of Emergency Motion for Special Findings.

*Simbaina*, 221 Md. App. at 457-58 (internal citations omitted) (providing that there is no requirement that SIJS factual findings be plead in a separate cause of action, and rather that the party must put the juvenile court "on notice" of the request for factual findings). In fact, even though Appellant cited this relevant precedent in numerous motions to the juvenile court,[14] the juvenile court orders did not acknowledge these cases.[15]

Given that it is well established that a juvenile court must make SIJS factual findings when requested in the pleadings, *See Romero*, 463 Md. at 190-91; *Simbaina*, 221 Md. App. at 458-59, and that Appellant adequately put the juvenile court "on notice" of his requests, the juvenile court was required to hear testimony and receive evidence to make independent factual findings regarding Appellant's eligibility for SIJ status. *See Romero*, 463 Md. at 190-91; *Simbaina*, 221 Md. App. at 458-59. The juvenile court is not tasked with "determin[ing] worthy candidates for citizenship[,]" but rather determin[ing] if a child has been "abused, neglected, or abandoned" and "cannot [be] reunif[ied] with a parent or be safely returned in their best interests to their home country." *Simbaina*, 221 Md. App. at

Finally, on April 23, 2025, Appellant filed an Emergency Motion to Vacate Orders Denying Special Findings of Fact and Law and Renewal of Request for SIJS Findings.

[14] Appellant's Emergency Motion for Special Findings of Fact and Law cited *Simbaina*, 221 Md. App. 440; *In re Dany G.*, 223 Md. App. 707; and *Romero*, 463 Md. 182 as relevant precedent. Appellant's Response to Notice of Deficiency and Renewal of Emergency Motion for Special Findings cited *Simbaina*, 221 Md. App. 440; *In re Dany G.*, 223 Md. App. 707. Appellant's Motion for Special Findings of Fact and Law cited *Simbaina*, 221 Md. App. 440; *In re Dany G.*, 223 Md. App. 707; and *Romero*, 463 Md. 182 as relevant precedent.

[15] Neither the juvenile court's October 29, 2024 Order, nor the juvenile court's March 24, 2025 Order acknowledged the case law cited in Appellant's various motions to the court.

458-59 (quoting *Leslie H.*, 224 Cal. App. 4th at 351). Therefore, the juvenile court must make independent factual findings on whether Appellant meets the requirements of 8 U.S.C. § 1101(a)(27)(J). *Simbaina*, 221 Md. App. at 458-59.

Finally, the juvenile court erred in denying Appellant's requests for SIJS factual findings in part because of Appellant's "failure to properly serve [his] biological parents" and "failure to include both biological parents as parties[.]" The "part[ies]" in a CINA case include the child who is subject to the petition, the child's parent, guardian, or custodian, and the petitioner. Md. Code Ann. Cts. & Jud. Proc. § 3-801(v)(1). The Maryland Rules provide that every pleading and other paper filed after the original pleading shall be served upon each of the parties "by delivery of a copy or by mailing it to the address most recently stated in a pleading or paper filed by the attorney or party, or if not stated, to the last known address." Md. Rule 1-321(a). Under Md. Code Ann. Cts. & Jud. Proc. § 3-801(v)(1), Appellant's parents are parties in Appellant's CINA case. Appellant complied with the service requirements under Md. Rule 1-321(a) by mailing a copy of the motion regarding SIJS and supporting documents to Appellant's mother at her last known address, sending a digital copy to her WhatsApp number, and mailing a copy of the motion regarding SIJS and supporting documents to Appellant's father's last known address.[16] No other methods of service were required of Appellant.

---

[16] Appellant's father's last known address is the address where he and Appellant lived together and that he left when Appellant was about four years old. Appellant has had no contact with his father since and has no other means to contact him.

20

The juvenile court erred because it had jurisdiction to make SIJS factual findings for Appellant, and in fact was required to do so.

### *The Juvenile Court Erred in its Application of the Law-of-the-Case Doctrine.*

#### A. Parties' Contentions

Appellant and Appellee agree that the juvenile court erred by applying the law-of-the-case doctrine in its March 24, 2025 Order. Appellant argues that the juvenile court's March 24, 2025 Order should be reversed because it "incorrectly described its own October 29, 2024, Order as the law of the case[,]" and because its requirement that Appellant serve a complaint and summons on his parents was "substantively incorrect."

Similarly, the Appellee asserts that the law-of-the-case doctrine "did not preclude granting [Appellant's] motion." Appellee argues that the law of the case doctrine "did not apply in these circumstances" because "[i]n the absence of an intervening appellate decision […] it does not apply to an earlier ruling of a circuit court." (citing *Scott v. State*, 379 Md. 170, 142 (2017)). Thus, Appellee concludes that despite the juvenile court's October 2024 determination that it lacked jurisdiction to make SIJS factual findings, "the court could, and should, have reached a different result in March 2025."

#### B. Standard of Review

Whether the law-of-the-case doctrine should be applied is a legal question that is reviewed *de novo*. *See Baltimore County v. Fraternal Order of Police*, 449 Md. 713, 731 (2016) (citing *Scott*, 379 Md. at 184-85); *Goldstein & Baron Chartered v. Chesley*, 375 Md. 244, 260-61 (2003)).

#### C. Analysis

21

The law-of-the-case doctrine is based on the "policy that when an issue is once litigated and decided, that should be the end of the matter." *U.S. v. U.S. Smelting Refining & Mining Co.*, 339 U.S. 186, 198 (1950) (citations omitted). In Maryland, the law-of-the-case doctrine is considered "one of appellate procedure[.]" *See Goldstein & Baron Chartered*, 375 Md. at 260-61 (quoting *Hawes v. Liberty Homes, Inc.*, 100 Md. App. 222, 230 (1994)). In other words, under this doctrine, "once an appellate court rules upon a question presented on appeal, litigants and lower courts become bound by the ruling, which is considered to be the law of the case." *Scott*, 379 Md. at 183. However, without an intervening appellate court ruling, this doctrine does not apply to an earlier trial court ruling. *See e.g. Scott*, 379 Md. at 184 (providing that a trial court judge's ruling on a matter is generally not bound by the prior ruling of another judge on the trial court on the same case); *Elec. Gen. Corp. v. Labonte*, 454 Md. 114, 140 (2017) (stating that the law-of-the-case doctrine typically does not apply to trial court decisions).

Here, the juvenile court erred in concluding that the juvenile court's Order on October 29, 2024, served as the law-of-the-case for the same court's Order on March 24, 2025. Both the October 29, 2024 Order and the March 24, 2025 Order were issued by trial court judges from the same court on the same case. Therefore, the October 29, 2024 Order cannot serve as the law of the case for the juvenile court's March 24, 2025 Order. *See Scott*, 379 Md. at 184.

**CONCLUSION**

22

Accordingly, we reverse the Circuit Court for Anne Arundel County's Order denying Appellant's Emergency Motion for Special Findings of Fact and Law, and remand with instructions that the juvenile court make Special Immigrant Juvenile Factual Findings for Appellant.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED AND REMANDED; COSTS TO BE PAID BY APPELLEE.**